**Eddie CORTEZ and Rita Cortez Individually and d/b/a Cortez Agency, Appellants,**

**v.**

**UNAUTHORIZED PRACTICE OF LAW COMMITTEE, STATE BAR OF TEXAS, Appellee.**

**No. 05–84–00072–CV.**

Court of Appeals of Texas, Dallas.

May 25, 1984.

Rehearing Denied July 16, 1984.

**804**

Allen Weed, Dallas, for appellants.

Bertran T. Bader, III, Dallas, for appellee.

Before STOREY, WHITHAM and SHUMPERT, JJ.

WHITHAM, Justice.

This is an injunction case. Appellee, the Unauthorized Practice of Law Committee of the State Bar of Texas, sued appellants, Eddie and Rita Cortez Individually and d/b/a the Cortez Agency, under TEX.REV. CIV.STAT.ANN. art. 320a–1 (Vernon Supp. 1984), to enjoin them from engaging in acts and practices which constitute the unauthorized practice of law. The jury found that the Cortezes exercised no legal skill or

knowledge in performing certain services pertaining to immigration. The trial court granted the committee's motion for judgment notwithstanding the verdict and entered a permanent injunction against the Cortezes.

In their first point, the Cortezes contend that the evidence raised an issue of fact for the jury. In their second point, the Cortezes contend that the question of what acts constitute the practice of law is for the jury. In their third point, the Cortezes contend that the trial court erred in holding as a matter of law that their acts and practices constituted the practice of law. We agree and conclude that the trial court erred in rendering judgment notwithstanding the verdict. Accordingly, we reverse and render judgment dissolving the injunction.

Mr. and Mrs. Cortez own and operate the Cortez Agency, which consists of bookkeeping and immigration services. The Cortezes advertise their immigration services, for which they charge a fee, usually $400.00, in publications which generally serve Spanish speaking readers. A fair translation of one such advertisement is as follows:

> The Cortez Agency has had 35 years of experience in every kind of immigration case.

Neither of the Cortezes is or claims to be a licensed attorney. The Cortez Agency was begun in 1947 by Mr. Cortez's father and has been located in the same building since 1952. The father started the agency at the suggestion of the vice-consul of the Mexican Consul's office, which recognized the need for this kind of service. The father retired in 1972 and the Cortezes became involved in the agency three years later in 1975. Mr. Cortez now performs the bookkeeping and tax services, while his wife primarily handles the immigration work taught her by her father-in-law. Mrs. Cortez admitted she knew nothing about the Immigration and Nationality Act.

The agency's customers are interested in obtaining permanent residency in the United States, for themselves or others. A

method of obtaining the status of 'legal alien' is to qualify under one of the categories of 'preferences.' A 'preference' deals with eligibility by virtue of the alien's relationship with a United States citizen or permanent resident. Mrs. Cortez questioned customers and determined if they qualified for a preference under the instructions on certain forms. If they did, she aided the customer in filling out the forms, and told them where to file it. Mrs. Cortez testified that normally there were three forms to be completed: I–130 (Petition to Classify Status of Alien Relative for Issuance of Immigration Visa); G–325A (Biographical Information); and I–485 (Petition to Acquire Residency). Additionally, Mrs. Cortez helped prepare various other forms relating to immigration matters. For example, she occasionally helped prepare the I–140 (Petition to Classify Preference Status of Alien on the Basis of Profession or Occupation). She testified, however, that she did not make the determination whether the alien required the I–130 (preference based on a relative) or the I–140 (preference based on a job), because the I–140 was initiated by the alien's employer and approved by the Department of Labor before reaching her. Twice a week, a licensed attorney at law came to his rent-free office provided by the agency to offer legal advice to their customers needing it. He did not review the files prepared by Mrs. Cortez and did not represent the agency. The agency referred customers to him to handle such matters as deportation proceedings and for advice and legal counsel.

Both parties called as experts qualified attorneys at law. The Cortezes' expert, Mr. Sauceda, testified that in his opinion Mrs. Cortez was not rendering services requiring the use of legal skill or knowledge. Upon cross-examination, Mr. Sauceda disagreed with the characterization of the form I–130 as a petition "as attorneys would say to start an action in a lawsuit." Mr. Sauceda also testified that the I–130 is much different from a will or other legal document which requires appropriate or "artful" legal language and legal judgment since there is only one standardized form to start the immigration process and that is

the I–130. In Mr. Sauceda's opinion, neither the selection nor completion of the I–130 requires legal skill or judgment. As to other forms, Mr. Sauceda testified that these merely inquire further into the background of the alien and did not require legal judgment.

On the other hand, the committee's expert witness, Mr. Foster, presented a contrary view. Mr. Foster testified that services such as those rendered by the Cortez Agency would require legal skill and knowledge. In particular, Mr. Foster testified that one must exercise legal skill in simply deciding whether or not to file an I–130. This conflicts directly with the viewpoint which Mr. Sauceda expressed, namely, that the I–130 is the only way to begin the immigration process. Mr. Foster further testified that selection of other forms requires legal skill and knowledge. Mr. Foster testified that legal skill is required to determine how much should be disclosed in the various forms, while Mr. Sauceda testified that unless the form is completely filled out, the Immigration and Naturalization Service will reject it.

The committee did not object to the court's charge which submitted the following sole special issue to the jury without explanatory instruction:

Do you find from a preponderance of the evidence that the Cortez Agency has given advice or rendered service requiring the use of legal skill and knowledge in interviewing persons and advising them as to whether or not to file a petition or application under the Immigration and Naturalization Act to secure a benefit for the client or relative of the client which require a careful determination of the facts, conclusions and legal consequences involved?

The jury answered "we do not."

This is a case of first impression in Texas. None of the Texas cases dealing with the unauthorized practice of law have addressed the question of whether immigration services such as those provided by the Cortezes constitute the practice of law. Nor has any reported case in Texas or

elsewhere been found which has decided whether it is within the province of the judge or of the jury to characterize acts or services alleged to be the practice of law. Thus, under the points of error, we must decide whether there can be a fact question for the jury in the present case and, if so, whether the evidence raised an issue for the jury.

First, we consider whether there can be a fact question for the jury. We begin with this understanding of the practice of law:

> According to the generally understood definition of the practice of law, it embraces the preparation of pleadings and other papers incident to actions of special proceedings, and the management of such actions and proceedings on behalf of clients before judges in courts. However, the practice of law is not confined to cases conducted in court. In fact, the major portion of the practice of any capable lawyer consists of work done outside of the courts. The practice of law involves not only appearance in court in connection with litigation, but also services rendered out of court, and includes the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

*Davies v. Unauthorized Practice Committee of the State Bar of Texas,* 431 S.W.2d 590, 593 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.).

█ We have looked long and hard at the undisputed facts as to the acts and practices of the Cortezes. Unlike the trial court, we cannot say with certainty that those services require "the use of legal skill or knowledge." *Davies,* 431 S.W.2d at 593. Nor can we say with certainty that "the legal effect [of the acts and practices] must be carefully determined." 431 S.W.2d at 593. We conclude that in the present case the undisputed evidence does not permit a holding as a matter of law that the acts and practices of the Cortezes constituted the practice of law. For example, consider the need to weigh evidence of

the Cortez advertisement, which might indicate the practice of law, against evidence of the Cortez referral of its customers needing legal advice to a licensed attorney at law, which might negate the practice of law. Therefore, in a case such as the present case, we conclude that the judicial decision-making process requires fact finding to determine whether the Cortezes engaged in the practice of law. Under our system, the jury must make the necessary fact findings.

Pointing to the words "the judicial branch," the committee, nevertheless, insists that the question is one of law for the court pursuant to TEX.REV.CIV.STAT. ANN. art. 320a–1, § 19(a) (Vernon Supp. 1984). That statute reads:

> For purposes of this Act, the practice of law embraces the preparation of pleadings and other papers incident to actions of special proceedings and the management of the actions and proceedings on behalf of clients before judges in courts as well as services rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined. This definition is not exclusive and does not deprive *the judicial branch* of the power and authority both under this Act and the adjudicated cases to determine whether other services and acts not enumerated in this Act may constitute the practice of law. (emphasis ours).

In our view, both judge and jury are components of "the judicial branch." Consequently, we conclude that article 320a–1, § 19, does not mandate that a judge alone should decide. Therefore, we hold that article 320a–1, § 19, does not render the question one of law for the court.

█ In construing what acts are prohibited, it is impossible to define comprehensively the practice of law and each case must be decided on its own particular facts. *Palmer v. Unauthorized Practice Com-*

*mittee of the State Bar of Texas*, 438 S.W.2d 374, 376 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ). Cases from other jurisdictions suggest that in a situation such as the present case the question of what constitutes the practice of law should be a question for the jury. This suggestion has been expressed this way:

> The development of any practical criterion for determining what constitutes the practice of law, as well as the application of such criterion, must be closely related to the purposes for which attorneys are licensed as the exclusive occupants of their field. However, what is difficult or doubtful question of law demanding the application of a trained legal mind *is not to be measured by the comprehension of a trained legal mind, but by the understanding thereof which is possessed by a reasonably intelligent layman* who is reasonably familiar with similar transactions.

7 C.J.S. *Attorney and Client* § 29 (1980) at 862 (emphasis added); *Gardner v. Conway*, 234 Minn. 468, 48 N.W.2d 788, 794 (1951); and *Agran v. Shapiro*, 127 Cal. App.2d Sup. 807, 273 P.2d 619, 626 (1954).

Furthermore, in cases involving the unauthorized practice of medicine, a Texas court has held that it is for the jury to decide whether the defendant is practicing medicine. *Robertus v. State*, 119 Tex. Crim. 370, 45 S.W.2d 595, 597 (1931) (question of whether defendant chiropractor was "practicing medicine" was a conclusion of fact for the jury to decide). With respect to the practice of medicine, the general rule has been stated as follows:

> In prosecution for practicing medicine or some specific branch of the healing arts without a license or authority, it is for the jury to decide, where the evidence is sufficient.

70 C.J.S. *Physicians and Surgeons*, § 28 (1951) at 929. We conclude, therefore, that the judicial system must be even handed in its approach. Judges, as former lawyers, may feel qualified to characterize challenged conduct in a case involving the practice of law, yet admit lack of expertise where other regulated professions are concerned. Nevertheless, the question does not become any less one of fact because judges are lawyers and jurors are not.

■ We conclude that the trial court erred in rendering judgment notwithstanding the verdict on the basis that the facts were undisputed and there remained only a question of law for the courts. That the facts are undisputed does not always eliminate the right to a fact finding. If reasonable minds can draw different inferences or conclusions from undisputed facts, a fact issue is presented. *Commercial Standard Insurance Co. v. Davis*, 134 Tex. 487, 137 S.W.2d 1, 2 (1940). We conclude that in the present case reasonable minds could draw different inferences or conclusions from the undisputed facts. It follows, and we so hold, that there is a fact question for the jury in the present case. We emphasize, however, that we reach this holding under the facts of the present case. We do not hold that there may never be a case in which the undisputed evidence shows as a matter of law that a person was engaged in the practice of law. *See, e.g., Davies*, 431 S.W.2d at 592.

■ Next, we consider whether the evidence raised an issue for the jury. We have concluded that in the present case reasonable minds could draw different inferences or conclusions from the undisputed evidence. It follows, and we so hold, that such evidence raised an issue for the jury. While the jury also heard expert testimony, this opinion is not to be read as holding that the expert testimony itself raised an issue for the jury. We do not hold that expert testimony can be used to create a fact issue in a situation where reasonable minds could *not* draw different inferences or conclusions from the undisputed evidence.

■ The expert testimony, however, was properly admitted in evidence once the jury issue was raised by the undisputed evidence. As a general rule, it is peculiarly within the province of the jury to weigh opinion evidence and the judgment of experts. *Octane Oil Refining Co. v. Blankenship-Antilley Implement Co.*, 117 S.W.2d 885, 886 (Tex.Civ.App.—Eastland

1938, no writ). It is within the province of the jury to decide which expert witness should be credited. *American Airlines, Inc. v. United States*, 418 F.2d 180, 194 (5th Cir.1969). Therefore, it was the jury's prerogative in the present case to credit the testimony of Mr. Sauceda over the testimony of Mr. Foster. The jury chose to draw the same conclusions from the facts as Mr. Sauceda drew from them, specifically, that the Cortezes exercised no legal skill or judgment in performing their immigration services. In ignoring the answer of the jury, we conclude that the trial court encroached upon the province of the jury.

Accordingly, we hold that it was proper to submit the issue to the jury and error to disregard its findings. It follows, and we so hold, that the trial court erred in rendering judgment notwithstanding the verdict and in holding as a matter of law that the acts and practices of the Cortezes constituted the practice of law.

We reverse the judgment of the trial court and render judgment dissolving the trial court's permanent injunction.

### On Motion For Rehearing

In its motion for rehearing, the committee asserts in a point of error that we erred in taxing costs against it because it is exempt from payment of costs. Although the committee cites no authority and makes no argument under this point, we assume the committee claims exemption as an instrumentality of the State.

TEX.R.CIV.P. 448 before and after amendment effective April 1, 1984, provides that "in any cause reversed by the Court of [Civil] Appeals, the appellant shall be entitled to an execution ... against the appellee for costs occasioned by such appeal...." TEX.R.CIV.P. 131 provides that "the successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." The Cortezes prevailed. Therefore, costs were assessed against the committee based on the well established rule that where the State enters the courts as a litigant, it places itself on the same basis as any other litigant. State of Texas by *Reyna v. Goldberg*, 604 S.W.2d 549, 553 (Tex.Civ.App.—Waco 1980, no writ); *Glass v. Great Southern Life Insurance Co.*, 170 S.W.2d 247, 249 (Tex.Civ.App.—Galveston 1943, writ ref'd w.o.m.). Ordinarily, in the absence of a statute exempting a governmental unit from the payment of court costs, it is liable just as any other litigant. *Childs v. Reunion Bank*, 587 S.W.2d 466, 471 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.); *see*, *Smith v. State*, 500 S.W.2d 682 (Tex.Civ. App.—Corpus Christi 1973, no writ)— (court's judgment operated to adjudge costs against State in a disbarment action, even though it was silent on the matter; and on rehearing, State waived right to complain as its motion to retax was untimely). We find no statute exempting the committee from payment of court costs. *Cf. County of Dallas v. Yellow Cab of Dallas, Inc.*, 573 S.W.2d 44 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.), in which statute prohibited taxing of costs.

For cases assessing costs against the State or its governmental entities, see *Kierstead v. City of San Antonio*, 643 S.W.2d 118, 122 (Tex.1982); *Parker County v. Spindletop Oil & Gas Co.*, 612 S.W.2d 944, 949 (Tex.Civ.App.—Fort Worth 1981), *aff'd in part and rev'd in part*, 628 S.W.2d 765 (Tex.1982); *Reyna*, 604 S.W.2d at 553; *Combined American Insurance Co. v. City of Hillsboro*, 421 S.W.2d 488, 491 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.); *Pierce v. City of Stephenville*, 206 S.W.2d 848, 852 (Tex.Civ.App.—Eastland 1947, no writ); *Glass*, 170 S.W.2d at 249; *Ibanez v. State*, 123 S.W.2d 704 (Tex.Civ. App.—El Paso 1938, no writ); *Norwood v. Taylor County*, 93 S.W.2d 573, 575 (Tex. Civ.App.—Eastland 1936, writ dism'd). Accordingly, we hold that the committee is liable for the court costs in the present case. All costs in the trial court and in this court are taxed against the committee. The committee's motion for rehearing is overruled.