UNAUTHORIZED PRACTICE
COMMITTEE, STATE BAR
OF TEXAS, Petitioner,

v.

Eddie CORTEZ et ux, Individually and
d/b/a Cortez Agency, Respondents.

No. C–3380.

Supreme Court of Texas.

May 8, 1985.

Rehearing Denied June 19, 1985.

Bertran T. Bader, III, Dallas, for petitioner.

Shank, Irwin and Conant, Allen Weed, Dallas, for respondents.

SPEARS, Justice.

This is an injunction case in which the Unauthorized Practice of Law Committee (the Committee) of the State Bar of Texas seeks to enjoin Eddie and Rita Cortez (the Cortezes) from engaging in certain acts alleged to be the practice of law. The trial court rendered judgment n.o.v. for the Unauthorized Practice Committee and issued a permanent injunction against the Cortezes. The court of appeals reversed the trial court judgment and dissolved the temporary injunction. 674 S.W.2d 803. We reverse the judgment of the court of appeals and affirm the trial court judgment.

Mr. and Mrs. Cortez are engaged in the business of providing immigration and bookkeeping services. Neither Mr. or Mrs. Cortez is a licensed attorney at law. Mrs. Cortez provides assistance to persons who are seeking to obtain immigration visas and permanent residency. The undisputed evidence at trial showed that the most common practice performed by Mrs. Cortez is the selection and completion of the I–130 form (Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa) for customers, by interviewing them, and filling out the form according to the instructions provided by the Immigration and Naturalization Service. Mrs. Cortez testified that normally a form G–325A (Biographical Information) and a form I–485 (Petition to Acquire Residency) were also required and she prepared these as well. She also completed several other forms less frequently, such as the I–140, I–600, N–600, and OF–230.

The Cortezes charged a fee, usually $400, for preparing these forms, gathering and storing the supporting documentation, and seeing that the alien has all documents necessary for his embassy interview. They have solicited customers by advertising in a Spanish-language newspaper. The translation of the ad reads, "The Cortez Agency has had 35 years of experience in every kind of immigration case. Consultation of Immigration by Cortez."

The Committee brought suit to enjoin the immigration activities of the Cortez Agency, and trial was before a jury. The sole special issue, submitted without objection, asked:

> Do you find from a preponderance of the evidence that the Cortez Agency has given advice or rendered service requiring the use of legal skill and knowledge in interviewing persons and advising them as to whether or not to file a petition or application under the Immigration and Naturalization Act to secure a benefit for the client or relative of the client which require a careful determination of the facts, conclusions and legal consequences involved?

The jury answered, "We do not."

The Committee moved for and obtained a judgment n.o.v. which permanently enjoined the Cortezes from advising customers whether or not to file particular petitions, from preparing for customers any

petition or application under the immigration laws, and from soliciting clients or customers through advertisements which suggest expertise and competence to handle immigration problems or cases.

Although the Committee vigorously argued that what the Cortezes were doing was undisputed, thus leaving a question for the court, the court of appeals dissolved the injunction holding that different inferences could be drawn from the undisputed testimony regarding the Cortezes' activities, thus creating a fact issue for the jury. The court of appeals further held that the determination of whether an activity required legal skill or knowledge was also a question for the jury. Therefore, the court of appeals held the jury finding was binding on the trial court. 674 S.W.2d at 807–08.

The Committee brings three points of error alleging that the trial court was correct in disregarding the jury verdict. First, the Committee argues that the activities of the Cortezes have been indisputably determined; therefore, no jury is needed to resolve a factual dispute. Second, the Committee contends that whether the undisputed activities constitute the unauthorized practice of law is a question of law for the court and not one for the jury. Third, the Committee argues that the undisputed activities of the Cortezes do constitute the practice of law. We will examine these questions together because of the interdependence among them.

We begin with the legislative expression of what constitutes the practice of law in Texas. The State Bar Act, Tex.Rev.Civ. Stat.Ann. art. 320a–1, § 19(a) (Vernon Supp.1985) defines the practice of law as follows:

> For purposes of this Act, the practice of law embraces the preparation of pleadings and other papers incident to actions of special proceedings and the management of the actions and proceedings on behalf of clients before judges in courts as well as services rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined. This definition is not exclusive and does not deprive the judicial branch of the power and authority both under this Act and the adjudicated cases to determine whether other services and acts not enumerated in this Act may constitute the practice of law.

This definition contains two major parts, one encompassing services rendered in connection with legal proceedings and one encompassing services rendered out of court.

The parties have focused upon both major parts of this definition to determine whether the Cortezes are practicing law. First, the statute specifically characterizes the preparation of pleadings incident to legal proceedings as the practice of law. The Committee argues that because the I–130 form, commonly filled out by Mrs. Cortez for others, constitutes the initial document petitioning the government for a preferential immigration status, its preparation falls within the statutory definition. The Cortezes' expert witness, Mr. Sauceda, an attorney, stated that he did not consider the form I–130 to be a "petition," as attorneys would say, to start an action in a lawsuit. Second, the parties have focused upon the portion of the definition relevant to out-of-court matters by inquiring whether the preparation of these immigration forms required the use of legal skill or knowledge and whether the legal effect of the forms must be carefully determined. This question was the gist of the special issue submitted to the jury, which found that the Cortezes activities did not require the use of legal skill and knowledge. We do not decide whether the forms such as the I–130 constitute pleadings within the meaning of section 19(a) of the State Bar Act. Rather, we decide the case on the portion of the section dealing with out-of-court services.

The evidence of Mrs. Cortez's activities in interviewing customers and filling out

forms to be filed with the Immigration and Naturalization Service was undisputed, and showed that she was advising her customers as to whether they qualified to file the various petitions and applications. The question of whether interviewing clients or customers and preparing immigration forms is the practice of law is one of first impression for this court. Apparently only one state court of last resort has addressed this issue. In *The Florida Bar v. Moreno-Santana*, 322 So.2d 13 (Fla.1975), the Supreme Court of Florida enjoined a non-lawyer from preparing immigration and naturalization forms for others and from advertising or representing the ability to perform such services. *Id.* at 15. The Cortezes seek to distinguish this Florida case by noting that the individual there represented himself to be an attorney. The Florida court, however, adopted the findings of the referee that the preparation of immigration forms to change the status of an alien requires legal training. *Id.* at 15–16. In *The Florida Bar v. Retureta-Cabrera*, 322 So.2d 28, 29 (Fla.1975), another individual was enjoined from preparing these immigration forms.

■ Although the act of recording a client's responses to the questions on the form I–130 probably does not require legal skill or knowledge, the act of determining whether the I–130 should be filed at all does require special legal skills. The Cortezes often filed I–130 forms which reflected that the alien seeking a visa was in this country illegally and furnished the immigration authorities with the alien's address, thus making deportation more likely. Therefore, advising a client as to whether to file an I–130 requires a careful determination of legal consequences.

Another danger is also presented by the manner in which the Cortezes conduct their business. When Mrs. Cortez was asked what she would do if the client did not qualify for a preference under the form instructions, she testified that she would

say that there was no way she could help. This act, when combined with the advertisement representing experience in every kind of immigration case, could likely mislead a customer to believe there is nowhere else to seek help and no other possibility for obtaining permanent residency. This is a type of occurrence which is sought to be prevented by prohibiting the unauthorized practice of law. We therefore hold that the undisputed activities of the Cortezes in selecting and preparing the various immigration forms required legal skill and knowledge.

■ Our holding presumes we have concluded that when the activities alleged to be the practice of law are undisputed, it is for the court to decide whether those activities amount to practicing law, and we now set forth the reasons for this conclusion. In the definition of practicing law in section 19(a) of the State Bar Act, the legislature ended the section stating:

> This definition is not exclusive and does not deprive the judicial branch of the power and authority under this Act and the adjudicated cases to determine whether other services and acts not enumerated in this Act may constitute the practice of law.

The Committee argues that the legislature is making clear that the courts should decide what is the practice of law. The court of appeals held that judges and juries are both components of the judicial branch, and therefore this language "does not mandate that a judge alone should decide." 674 S.W.2d at 806. We will examine the history of this language to determine the legislative intent.

In *Hexter Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas*, 142 Tex. 506, 179 S.W.2d 946 (1944), this court reviewed certain acts to determine if they constituted the unauthorized practice of law under article 430a of the 1925 Penal Code (repealed).[1] After finding a violation under the statute,

---

**1.** Unauthorized Practice Act, ch. 238, 1933 Tex. Gen.Laws 835, 835–38, *repealed by* Act of June 1, 1949, ch. 301, § 1, 1949 Tex.Gen.Laws 548.

this court specifically left undecided "whether or not this court would have the implied authority to determine what would constitute the practice of law, independent of the statute...." *Id.* at 954. In the companion cases of *Grievance Committee, State Bar of Texas, Twenty-First Congressional Dist. v. Dean,* 190 S.W.2d 126 (Tex. Civ.App.—Austin 1945, no writ) and *Grievance Committee, State Bar of Texas, Twenty-First Congressional Dist. v. Coryell,* 190 S.W.2d 130 (Tex.Civ.App.—Austin 1945, writ ref'd w.o.m.), the Austin court of appeals addressed this previously reserved question, observing:

> independently of any statutory provisions as to what may constitute practice of law, the court has the duty and the inherent power to determine in each case what constitutes the practice of law, and to inhibit persons from engaging in the practice of law without having obtained a license to do so. This power of the court, the related statutes of this State, and the decisions are more fully discussed in our opinion in the companion *Dean* case.

*Coryell* at 131. In *Dean,* the court stated that the legislative definition was not exclusive and "does not deprive the judicial branch of the power and authority, both under the State Bar Act and the adjudicated cases, to determine whether other services and acts not therein enumerated, may constitute the practice of law." *Dean* at 129.

 The legislature lifted the language from *Dean* and placed it in section 19(a) of the State Bar Act with the apparent intent to recognize the inherent power of the courts to determine what is the practice of law on a case by case basis, unconfined by the statute. *Coryell* and *Dean* have been cited by this court in recognizing the inherent power of the courts. *See Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 & n. 1 (Tex.1979). Therefore, even though we have used the legislative definition of the practice of law to aid us in this case, the courts are not bound by the jury's determination of whether the undisputed acts fell within this statutory definition.

The court of appeals determined that this final question should be one for the jury and relied on *Robertus v. State,* 119 Tex.Cr.R. 370, 45 S.W.2d 595, 597 (1931) which held that a jury should decide whether certain activities constituted the practice of medicine. 674 S.W.2d at 807. Cases involving other professions are not determinative here. The courts have the duty and authority to supervise the legal profession by ensuring that those practicing law are qualified and by determining the boundaries of the practice of law. The direct policing relationship between the courts and the legal profession does not exist between the courts and other professions. The right to trial by jury still exists, of course, in cases where the alleged acts are disputed and factual determinations must be made, but the courts may ultimately decide whether certain undisputed activities constitute the unauthorized practice of law.

We hold that the trial court was proper in rendering judgment n.o.v. and in granting the permanent injunction against the Cortezes. Accordingly, the judgment of the court of appeals is reversed, and the trial court judgment is affirmed.