**DALLAS COUNTY APPRAISAL DISTRICT and Dallas County Appraisal Review Board, Appellants,**

v.

**THE LEAVES, INC., Appellee.**

No. 05–86–01043–CV.

Court of Appeals of Texas, Dallas.

Sept. 28, 1987.

Rehearing Denied Dec. 14, 1987.

---

Peter G. Smith, Roy L. Armstrong, Dallas, for appellants.

Ronald M. Mankoff, G. Tomas Rhodus, Ronald A. Stein, Dallas, for appellee.

Before WHITHAM, ROWE and HECHT, JJ.

HECHT, Justice.

The district court reversed the rulings of the Dallas County Appraisal District and the Dallas County Appraisal Review Board which denied The Leaves, Inc. a charitable organization exemption from ad valorem taxation for 1984. During the pendency of this litigation the Review Board reversed itself and granted The Leaves tax exemption for the 1986. Notwithstanding this reversal of position, the Appraisal District and the Review Board persist in contending that the district court erred in adjudging The Leaves tax exempt in 1984. We affirm the judgment of the district court, and because we conclude that this appeal has been taken for delay and without sufficient cause, we award The Leaves damages equal to ten times the total taxable costs on appeal.

I

This case was tried before the court without a jury, and most of the facts were

stipulated by the parties in writing. The material facts are thus undisputed.

The Leaves, Inc. is a Texas nonprofit corporation, exempt from federal income taxation, organized for exclusively religious, charitable, scientific, literary or educational purposes. The Leaves operates as a nursing home, providing care for the elderly and infirm, under the auspices of the First Church of Christ, Scientist, of Boston, Massachusetts. The Leaves' administrator, trustees and nurses are all Christian Scientists, as are most of its patients. As a matter of both policy and practice, The Leaves admits persons who are not Christian Scientists, but all patients must agree to rely entirely upon the Christian Science method of healing, the sole method practiced in the facility, and all are expected and encouraged to listen to, read and study Christian Science literature.

The Leaves charges for its services but does not turn away patients who cannot pay. Financial assistance from contributions to a benevolence fund is available to patients, Christian Scientists and non-Christian Scientists alike, upon application. Moreover, The Leaves' total operating revenue falls far short of its operating expenses, and the deficit is made up from outside contributions to the facility.

## II

The qualifications for tax-exempt charitable organizations are set by section 11.18 of the Texas Property Tax Code Annotated (Vernon Supp.1987).[1] The Appraisal District[2] admits that The Leaves meets all statutory requirements for tax exemption but two: exclusive engagement in specified charitable functions, and pledge of its assets for use in performing those functions.

## A

The Leaves claims exemption from ad valorem taxes under sections 11.18(c)(1)(C), (M), and 11.18(d), which state:

(c) To qualify as a charitable organization for the purposes of this section, an organization (whether operated by an individual, as a corporation, or as an association) must:

(1) be organized exclusively to perform religious, charitable, scientific, literary, or educational purposes and, except as permitted by Subsection (d) of this section, engage exclusively in performing one or more of the following charitable functions:

. . . . .

(C) providing support to elderly persons or the handicapped without regard to the beneficiaries' ability to pay;

. . . . .

(M) providing permanent housing and related social, health care, and educational facilities for persons who are 62 years of age or older without regard to the residents' ability to pay. . . .

. . . . .

(d) Performance of noncharitable functions by a charitable organization that owns or uses exempt property does not result in loss of an exemption authorized by this section if those other functions are incidental to the organization's charitable functions.

The Appraisal District argues that The Leaves does not meet these statutory requirements because principally, not just incidentally, it provides services only for payment.

### 1

The district court originally found that both the policy and the practice of The Leaves is to admit patients without regard to ability to pay. In amended findings, however, the district court omitted any statement about The Leaves' practice. The amended findings, the Appraisal District argues, supersede the original findings, thereby eliminating any finding as to The Leaves' practice. Inasmuch as actual practice, not policy, is the basis for the claimed exemption, the Appraisal District argues

---

**1.** All statutory references are to this code unless otherwise noted.

**2.** By reference to the Appraisal District we include the Review Board, unless otherwise noted.

that the findings do not support the judgment. Assuming the district court did intend by its amended findings to withdraw its original findings, we nevertheless disagree that the district court made no finding as to The Leaves' practice. The district court refused the Appraisal District's request to find the opposite, that is, that The Leaves does not provide its services without regard to ability to pay. Refusal of a requested finding of material fact amounts to a finding to the contrary. *Thompson v. Lee Roy Crawford Produce Co.*, 149 Tex. 357, 233 S.W.2d 295, 297 (1950). Implicitly, at least, the district court found the facts necessary to support The Leaves' claim of exemption by denying the Appraisal District's requested finding.[3]

### 2

The Appraisal District argues that the evidence is legally and factually insufficient to support any finding that The Leaves performs its services without regard to its patients' ability to pay. The Appraisal District bases its argument on the fact that less than 2% of patient charges in 1984 were paid from The Leaves' benevolence fund. The Appraisal District dismisses as irrelevant the fact that The Leaves operated at a $135,000 or 14% loss in 1984, thereby in effect subsidizing each patient with outside funds contributed to the institution.

■ An organization which provides housing, support or medical care for the elderly and infirm is not to be denied tax exemption merely because some, or even a majority, of its patients are able to pay for their own care.[4]

> [I]t is well settled that the fact that paying patients predominate over those unable to pay does not detract from the charitable nature of the service rendered.... Reliance upon percentages of paying patients versus non-paying patients, however, should not be the controlling factor. With the advent of present day social security and welfare programs, the traditional concept of charity, involving the extension of free services to the poor and alms-giving, will be rarely found since wide ranging assistance is available to the poor under such programs. Furthermore, the courts have defined charity to be something more than mere alms-giving or the relief of poverty and distress.... The ultimate consideration then, should be based upon an evaluation of the total operation of the institution engaged in humanitarian activities whose services are rendered at cost or less and which are maintained to care for the physical and mental well-being of the recipients.

*City of McAllen v. Evangelical Lutheran Good Samaritan Soc'y*, 530 S.W.2d 806, 810 (Tex.1975).

■ Considering only the evidence and inferences favorable to the judgment,[5] we find there is some evidence that The Leaves provides its services without regard to its patients' ability to pay. Besides admitting patients without regard to their ability to pay, both in policy and in practice,

---

3. Appellants' points of error 10–12 are overruled.

4. *See City of McAllen v. Evangelical Lutheran Good Samaritan Soc'y*, 530 S.W.2d 806 (Tex. 1975) (exemption granted, no patients wholly unable to pay anything, hospital operated at substantial loss); *Santa Rosa Infirmary v. City of San Antonio*, 259 S.W. 926 (Tex.Com.App. 1924, judgmt adopted) (14% patients received charity, hospital operated at a profit used to provide further services); *Lamb County Appraisal District v. South Plains Hospital–Clinic, Inc.*, 688 S.W.2d 896 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.) (exemption granted, 3% of patients received charity, hospital had no source of income other than paying patients); *State v. Alliance Village, Inc.*, 592 S.W.2d 687 (Tex.Civ.App.

—Corpus Christi 1979, no writ) (exemption granted, 40% of patients received charity, hospital operated at substantial loss); *cf. Hilltop Village, Inc. v. Kerrville Ind. School Dist.*, 426 S.W. 2d 943 (Tex.1968) (77% of nursing home residents paid in full and balance paid in part, institution operated at substantial loss); *Aransas Hosp., Inc. v. Aransas Pass Ind. School Dist.*, 521 S.W.2d 685 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (exemption denied, less than 2% patients received charity, hospital operated at a loss).

5. This, of course, is the standard for determining whether there is no evidence to support the judgment. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

The Leaves contributes to patient care charges through its benevolence fund and underwrites 14% of the total cost of patient care with outside contributions. Considering all the evidence,[6] the total operation of The Leaves, we conclude that it provides its services regardless of its patients' ability to pay, irrespective of the fact that nearly all of The Leaves' patients pay something toward the cost of their care.[7]

B

The Appraisal District contends that The Leaves does not comply with section 11.-18(c)(3)(A), which requires:

(c) To qualify as a charitable organization for the purposes of this section, an organization (whether operated by an individual, as a corporation, or as an association) must:

. . . . .

(3) by charter, bylaw, or other regulation adopted by the organization to govern its affairs:

(A) pledge its assets for use in performing the organization's charitable functions. . . .

The Leaves' articles of incorporation specify:

The purposes for which the corporation is formed are:

A. To establish and maintain a nursing home devoted to the care of those persons depending entirely on Christian Science treatment for healing;

B. To establish and maintain a visiting nurse service devoted to the care of those persons depending entirely on Christian Science treatment for healing;

C. To establish and maintain a rest home devoted to the care of those persons depending entirely on Christian Science treatment for healing;

D. To provide, establish and maintain any and all other forms of care, service, assistance, aid and benevolence to those persons depending entirely on

Christian Science treatment for healing.

The Leaves' bylaws state:

The duties and powers of the Board of Trustees shall include but shall not be limited to the following:

1. To take, hold, invest and administer all funds, property, and assets of every kind which may belong or be given to the corporation, for the purposes of the corporation. . . .

The Appraisal District argues that these provisions in The Leaves' charter and bylaws do not "pledge" its assets, in so many words, for use in its charitable functions. At most, the Appraisal District contends, these provisions merely allow The Leaves to use its assets in its charitable functions, but do not restrict their use exclusively to those functions.

The purposes of a nonprofit corporation must be stated in its articles of incorporation. Tex.Rev.Civ.Stat.Ann. arts. 1396–2.02(B), 1396–3.03 (Vernon 1980). A corporation has only those powers stated in its articles of incorporation and allowed by law. *See Calvert v. Capital Southwest Corp.*, 441 S.W.2d 247, 255 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.), *appeal dismissed*, 397 U.S. 321, 90 S.Ct. 1120, 25 L.Ed.2d 336 (1970). "The enumeration of those powers implies the exclusion of all others not fairly incidental. . . ." 6 W. Fletcher, Encyclopedia of the Law of Private Corporations § 2477, at 293–294 (1968). Corporate assets cannot be used for purposes not authorized by its articles of incorporation. *Texas Soc'y v. Fort Bend Chapter*, 590 S.W.2d 156, 159 (Tex. Civ.App.—Texarkana 1979, writ ref'd n.r. e.).

■ By specifying only charitable purposes in its articles of incorporation and bylaws, The Leaves is restricted from using its assets for any other purpose. As a matter of law, its assets are pledged for its

---

6. This, of course, is the standard for reviewing sufficiency of the evidence. *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 594 (Tex.1986).

7. Appellants' points of error 13 and 14 are overruled.

charitable functions within the meaning of section 11.18(c)(3)(A).[8]

## III

Article 8, section 2 of the Texas Constitution provides that "the legislature may, by general law exempt from taxation . . . institutions of purely public charity." An institution is a "purely public charity" if it meets each of three criteria

> First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefitted persons indefinite in numbers and in personalities, by preventing them through absolute gratuity, from becoming burdens to society and to the state.

*City of Houston v. Scottish Rite Benevolence Ass'n,* 111 Tex. 191, 230 S.W. 978, 981 (1921). The Appraisal District argues that The Leaves engages in religious discrimination, preferring Christian Scientists as patients, and therefore fails to meet the third criterion stated above.

## A

The district court originally found that The Leaves does not discriminate on the basis of race, creed, color, religion or sex in admitting patients, either in policy or in practice. The district court omitted these findings from its amended findings, and did not find that The Leaves benefits society generally. However, the district court also refused the Appraisal District's request to find the opposite, that is, that The Leaves does discriminate against non-Christian Scientists and therefore does not benefit society generally. For the same reasons we have explained in part II(A)(1) above, the district court found, at least implicitly, the facts necessary to support The Leaves' contention that it is a purely public charity.[9]

## B

■ The Appraisal District argues that the evidence is legally and factually insufficient to support any finding that The Leaves qualifies as a purely public charity. Specifically, the Appraisal District contends that by discriminating against non-Christian Scientists The Leaves performs services which benefit only a small group and not the general public.

Considering only the evidence and inferences favorable to the judgment,[10] we find there is some evidence that The Leaves' services benefit the general public. In policy, The Leaves is open to all for whom there is room, and in practice, The Leaves admits patients who are not Christian Scientists. This is some evidence in support of the judgment. Considering all the evidence,[11] we conclude that the facts that The Leaves prefers Christian Scientists as patients, practices only the Christian Science method of healing, and encourages its patients to study Christian Science teachings daily do not weigh so heavily against evidence of The Leaves' non-discriminatory practices as to deprive the district court's judgment of support. Even if The Leaves were to discriminate on the basis of religion, it would not for that reason alone fail to qualify as a purely public charity.

> The word "purely" was meant "to describe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity; but it was never meant that, because a charity was limited by its terms to objects belonging to a certain sect or fraternal order, or color, or class, it was a private, and not a public charity."

*Scottish Rite,* 230 S.W. at 981; *but see State v. Alliance Village, Inc.,* 592 S.W.2d 687, 691 (Tex.Civ.App.—Corpus Christi 1979, no writ) (nursing home to be tax exempt must have an open admissions policy which does not discriminate on grounds

---

8. Appellants' points of error 1, 2, 4, 5 and 6 are overruled. In view of our conclusion, we need not address points of error 3, 7, 8 and 9.

9. Appellants' points of error 18–21 are overruled.

10. See note 5, *supra.*

11. See note 6, *supra.*

of race, religion, color or ability to pay). We conclude that the evidence is sufficient to hold that The Leaves operates as a purely public charity within the meaning of the constitution.[12]

■ The Appraisal District's argument is especially disingenuous in view of the evidence that it acknowledges as tax exempt other religious nursing homes. To justify its position the Appraisal District emphasizes that The Leaves actually prefers Christian Scientists and requires its patients to use only care approved by the Christian Science religion, whereas other religious nursing homes are not so restricted. The distinctions are illusory. As long as a nursing home provides care to persons who would otherwise become burdens upon the state, it meets the requirement that its services benefit the general public, regardless of the religious motivations of its operators.[13]

## IV

The Appraisal District urges that the district court erred in two additional respects.

### A

■ The Leaves' timely filed notice of appeal from the Review Board's decision recites that the decision was "stated in open session before the full Board on Friday, June 20, 1984". The decision was actually made by the Review Board on July 20, a Friday, not June 20, a Wednesday. The Appraisal District argues that this obvious typographical error deprived the district court of jurisdiction.

A timely, written notice of appeal is a prerequisite to appeal from a decision of the Review Board. Tex.Prop.Tax Code Ann. § 42.06 (Vernon 1982). The statute does not prescribe the contents of the notice. In this case there was no confusion as to what decision The Leaves was appeal-

ing. The district court did not err in holding that it had jurisdiction over the case.[14]

### B

The Appraisal District complains at considerable length about the general conduct of discovery before the district court. It asserts error, however, in only two respects.

First, the Appraisal District argues that the district court erred in refusing to order The Leaves to produce information reflecting the number of patients who were not Christian Scientists, the compensation paid The Leaves' staff, all sources of its income, and all uses of its assets. The Appraisal District first moved to compel this discovery less than three weeks before trial. The decision whether to compel discovery is within the sound discretion of the trial court. *Alexander v. Barlow,* 671 S.W.2d 531, 534 (Tex.App.—1983, writ ref'd n.r.e.). The Appraisal District has failed to demonstrate any such abuse.[15]

Second, the Appraisal District argues that the district court erred in admitting the testimony of John Beatty, whom The Leaves failed to identify during discovery as someone with knowledge of the case. The Appraisal District has failed to demonstrate any harm from admission of Beatty's testimony. Even if admission of the testimony was error, it was harmless.[16]

### V

Texas Rule of Appellate Procedure 84 provides:

In civil cases where the court shall determine that an appeal or writ of error has been taken for delay and without sufficient cause, then the appellate court may, as part of its judgment, award each prevailing appellee or respondent an amount not to exceed ten percent of the amount of damages awarded to such appellee or respondent as damages against

---

**12.** Appellants' points of error 15–17 and 22–23 are overruled.

**13.** Appellants' point of error 24 is overruled.

**14.** Appellants' points of error 25–27 are overruled.

**15.** Appellants' point of error 28 is overruled.

**16.** Appellants' point of error 29 is overruled.

such appellant or petitioner. If there is no amount awarded to the prevailing appellee or respondent as money damages, then the appellate court may award, as part of its judgment, each prevailing appellee or respondent an amount not to exceed ten times the total taxable costs as damages against such appellant or petitioner.

After reviewing this entire case very carefully, we have concluded that the Appraisal District has prosecuted this appeal for delay and without sufficient cause.

■ The Appraisal District has prosecuted this appeal after its own counsel has admitted to us it has changed its decision and granted The Leaves tax exemptions from 1986, even though aware of no significant changes in the facts. Grounds for appeal abandoned by a party in fact cannot provide sufficient cause for the appeal. The Appraisal District's conduct is particularly disturbing coming from a public agency with some responsibility of fairness to taxpayers affected by its decisions.

The purpose of rule 84 is to shift part of an appellee's expense and burden of defending itself in a frivolous appeal to the appellant. That purpose requires in this case that the Appraisal District be assessed an amount equal to ten times the total taxable costs on appeal, to be awarded The Leaves.

### ON MOTION FOR REHEARING

The Appraisal District [1] complains in its motion for rehearing that we should not and could not have assessed damages against it under Rule 84, Texas Rules of Appellate Procedure.

First, the appraisal district argues that in determining whether an appeal is taken without sufficient cause we must consider whether, "from the point of view of the appealing advocate ... it clearly appears that he had no reasonable grounds to believe that the case would be reversed on appeal." Assuming this to be the correct standard, and applying it to this case, we cannot avoid the conclusion that damages are warranted against the Appraisal District. From its point of view, having already abandoned its own position and concluded for subsequent tax years that The Leaves is exempt from ad valorem taxation, the Appraisal District clearly had no reasonable grounds to believe that the case would be reversed.

Second, the Appraisal District argues that we should consider whether it stood to gain financially from delay in the resolution of the case. Rule 84 imposes no such standard. If it did, damages could not be assessed in any case in which the stakes were non-pecuniary, no matter how frivolous the appeal. The rule requires that an assessment of damages for an appeal taken without sufficient cause be based upon a determination that the appeal has been taken for delay. The rule does not require, however, that the delay found by the court result from any particular motivation, financial or otherwise. It is the fact of delay that is important, not the reason. Thus, we need not speculate as to the Appraisal District's motives, whether, for instance, the it may have been moved to prolong this litigation in hopes that the taxpayer would weary of the expense and burden of litigation and abandon suit. It is enough under the rule for us to find that the Appraisal District has delayed the final resolution of this matter by this appeal.

■ Third, the Appraisal District argues that damages under Rule 84 cannot be imposed against governmental entities, like itself, citing *Rockwall County v. McLendon*, 122 S.W.2d 228 (Tex.Civ.App.—Dallas 1938, no writ). *McLendon* was an appeal from a judgment commanding a county commissioners' court to pay a condemnation award that was final on appeal. The court concluded that the judgment should be affirmed, and then stated:

Plaintiffs suggest delay and request that judgment be affirmed with damages. To justify the imposition of ten

---

1. We continue by this reference to include both the Dallas County Appraisal District and the Dallas County Review Board.

percent penalty for delay, it must appear that, at the time the appeal was perfected, the appealing party had no reasonable ground to believe the judgment would be reversed.... The record discloses that the defenses urged in the court below were based upon a number of comparatively recent statutes; the contention of defendants being that, under a correct construction of the statutes, no recovery could be had; so, in this situation, we are not prepared to say that, at the time the appeal was perfected, defendants had no reasonable ground to believe the judgment would not be reversed. Besides the penalty authorized by statute, Art. 1860, R.S.[2], is imposed as punishment against the appealing party for prosecuting a frivolous appeal for delay. Appellants are public officials of Rockwall County, hence the penalty, if imposed, would be against the tax-payers of Rockwall County and not against these officials personally, therefore, believing the statute in applicable to the situation, recovery of ten percent delay damages is denied. Plaintiffs will be made entirely whole when they collect the face of the judgment, interest and court costs.

After a finding that the appeal was not frivolous, the *McLendon* court's further observation that the statute allowing delay damages for frivolous appeals did not apply to governmental entities is dicta which we are not bound to follow. Furthermore, we are not inclined to follow the *McLendon* court's reasoning. We see little distinction between damages for frivolous appeals and court costs, which are clearly assessable against governmental entities absent express statutory exemption. *See Cortez v. Unauthorized Practice of Law Committee,* 674 S.W.2d 803, 808 (Tex.App.—Dallas 1984), *rev'd on other grounds,* 692 S.W.2d 47 (Tex.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 86 L.Ed.2d 337 (1985). The fact

that the burden of the Appraisal District's misconduct falls upon the taxpayers does not alter our conclusion. We see no reason why taxpayers as a group should not be required to help compensate individual taxpayers subjected by their government to frivolous litigation.

The Appraisal District's motion for rehearing is denied.

---

2. Tex.Rev.Civ.Stat.Ann. art. 1860 provided:
    Where the court shall find that an appeal or writ of error has been taken for delay, and that there was no sufficient cause for taking such appeal, then the appellant or plaintiff in error, if he be the defendant in the court below, shall pay ten per cent on the amount in dispute as damages, together with the judgment, interest and cost of suit thereon accruing.

Article 1860 was repealed by Texas Rule of Civil Procedure 438, the predecessor of Rule 84.