NO.
12-05-00113-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

SAMUEL G. NEWTON, III,            §                      APPEAL FROM THE 349TH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

CLINTON W. DELESPINE,

APPELLEE   §                      HOUSTON
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Samuel G.
Newton, III appeals from the trial court’s order of dismissal of his breach of
contract and fraud action against Clinton W. Delespine.  In three issues, Newton contends the trial
court erred in granting Delespine’s motion for summary judgment and in not
granting Newton’s motion for summary judgment. 
We affirm.

 

Background








            Newton and
Delespine are both inmates in the Texas Department of Criminal Justice.
Delespine believed he was entitled to the proceeds from the estates of his
mother, Imogene Delespine, and his aunt, Margaret Applewhite, but needed help
with the process.  Delespine asked Newton
to help him with those two probate matters. 
Newton drafted a contract entitled “Agreement for the Professional
Management of Contracted Legal Services” signed by the parties, together with a
power of attorney, on February 10, 2000. 
In this document, Newton, calling himself “brocator,” agreed to provide “professional
advice and management of legal services” in the two probate matters and
litigation arising from those matters. 
The contract provides that Newton, “in the exercise of his professional
and administrative judgement [sic] may employ counsel in representing
[Delespine’s] interest.”  Delespine
agreed to pay Newton no less than 25% and no more than 50% of the recovery, if
any, from the two estates.  Newton
contacted George Adams, an attorney he knew in San Antonio, whom Delespine
hired to settle his mother’s estate. 
Delespine inherited nothing from his aunt’s estate, but he recovered
approximately $192,000.00 from his mother’s estate.  

            In January
2001, Newton offered Delespine the opportunity to become a partner in a
business based in Wyoming called the Aransas Cattle Company Syndicated
Investment 2001 Ltd.  The partnership was
to engage in the purchase, production, and sale of cattle.  Newton was named managing general partner and
Delespine was to be a limited partner. 
Delespine was to provide $30,000.00 as capital for this
partnership.  

            Delespine
did not pay Newton for his services as brocator or to buy into the
partnership.  In August 2002, Newton
filed suit for damages for Delespine’s breach of contract and fraudulent
misrepresentation, or alternatively, for specific performance of the “brocator’s”
contract.  Newton claimed actual damages
in the amount of $99,320.50 for his breach of contract cause of action,
$99,240.50 for his fraudulent misrepresentation cause of action, $25,000.00 for
mental anguish, and $25,000.00 in exemplary damages.

            Delespine
filed a motion for summary judgment asserting that the contract is
unenforceable for various reasons. 
Newton filed a “Plaintiff’s Counterclaim for Summary Judgment Against
Defendant” asserting entitlement to judgment as a matter of law on his fraud
and breach of contract claims.  The trial
court granted Delespine’s motion and dismissed the case.

 

Summary
Judgment

            In
his first issue, Newton contends the trial court erred in granting Delespine’s
motion for summary judgment.  He argues
that Delespine failed to show there exists no genuine issue of material fact
and the record is devoid of any proper summary judgment evidence in favor of
Delespine.

Applicable Law

            To
obtain a summary judgment, the movant has the burden of showing that there is
no genuine issue of material fact and that he is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c). 
Summary judgment for a defendant is proper when the summary judgment
evidence negates an essential element of the plaintiff’s cause of action as a
matter of law or conclusively establishes all elements of an affirmative
defense as a matter of law.  See
Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex. 1990).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
nonmovant to produce controverting evidence raising a fact issue as to the
elements negated.  Torres v.
Western Cas. & Sur. Co., 457 S.W.2d 50, 52 (Tex.
1970); Owen Elec. Supply, Inc. v. Brite Day Constr. Inc., 821
S.W.2d 283, 286 (Tex. App–Houston [1st Dist.] 1991, writ denied).

            When
both parties move for summary judgment, each party bears the burden of
establishing that it is entitled to judgment as a matter of law, and neither
party can prevail because of the other’s failure to discharge his burden.  Guynes v. Galveston County, 861
S.W.2d 861, 862 (Tex. 1993); State Farm Lloyds, Inc. v. Williams,
791 S.W.2d 542, 549-50 (Tex. App.–Dallas 1990, writ denied).  When reviewing competing motions for summary
judgment, we consider all the evidence accompanying both motions.  Dallas County Appraisal Dist. v.
Institute for Aerobics Research, 766 S.W.2d 318, 319 (Tex. App.–Dallas
1989, writ denied) (op. on reh’g).  We
must indulge all reasonable inferences and resolve all doubts in favor of the
losing party.  University of Tex.
Health Sci. Ctr. v. Big Train Carpet of El Campo, Inc., 739 S.W.2d 792,
792 (Tex. 1987).  If the trial court
grants one motion and denies the other, the appellate court should determine
all questions presented and may render the judgment the trial court should have
rendered.  Jones v. Strauss,
745 S.W.2d 898, 900 (Tex. 1988) (orig. proceeding).  When the order granting summary judgment does
not specify the particular grounds the trial court sustained, an appellate
court must uphold the summary judgment on any ground that is supported by the
evidence and pleadings.  Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989). 

            The
essential elements of a breach of contract claim are that a valid contract
existed, the plaintiff performed, the defendant breached, and the plaintiff
suffered resulting damages.  Scott
v. Sebree, 986 S.W.2d 364, 372 (Tex. App.–Austin 1999, pet.
denied).  The elements of actionable
fraud are that 1) a material representation was made, 2) the representation was
false, 3) when the representation was made, the speaker knew it was false or
made it recklessly without any knowledge of its truth and as a positive
assertion, 4) the speaker made the representation with the intent that it
should be acted upon by the party, 5) the party acted in reliance upon the
representation, and 6) the party thereby suffered injury.  Eagle Props., Ltd. v. Scharbauer,
807 S.W.2d 714, 723 (Tex. 1990).  A
fraudulent inducement claim will not survive in the absence of a binding
agreement.  Haase v. Glazner,
62 S.W.3d 795, 798 (Tex. 2001).

Analysis

            In
his motion for summary judgment, Delespine asserted, among other arguments,
that the contract is unenforceable because it is a contract for legal services
by a nonlawyer and any work done pursuant to that contract would constitute the
unauthorized practice of law.  If true,
both of Newton’s causes of action fail.

            In
general, the practice of law embraces all advice to clients and all action
taken for them in matters connected with the law.  Brown v. Unauthorized Practice of Law
Comm., 742 S.W.2d 34, 41 (Tex. App.–Dallas 1987, writ denied); see
also Tex. Gov’t Code Ann. §
81.101 (Vernon 2005) (Practice of law means preparation of documents incident
to an action, management of the action on behalf of a client in court and as a
service rendered out of court, including the giving of advice or rendering any
service requiring the use of legal skill or knowledge, the legal effect of
which under the facts and conclusions involved must be carefully
determined.).  Courts have the inherent
power to determine on a case by case basis whether activities constitute the
unauthorized practice of law.  Unauthorized
Practice Comm. v. Cortez, 692 S.W.2d 47, 51 (Tex. 1985).  In considering whether Newton’s actions
constitute the unauthorized practice of law, we look to the entire record.  See Dallas County Appraisal Dist.,
766 S.W.2d at 319.

            The
initial contract between the parties is entitled “Agreement for the
Professional Management of Contracted Legal Services.”  It provides that Newton, as “brocator,” will
provide professional advice and management of legal services to Delespine, the
client.  The word “brocator” is not
defined in the document.  Newton claims
the word simply means “broker.”  We have
been unable to find it in any dictionary. 
The document states that all retainers and fees charged are in line with
fees customarily charged in the area for similar “legal services.”  The contract also provides that Newton, “in
the exercise of his professional and administrative judgement [sic] may employ
counsel in representing [Delespine’s] interests.”  Any disagreement arising between Delespine
and the retained attorney would be arbitrated by Newton and “professionally
managed to conclusion.”  Regarding Newton’s
pay, the contract states that “[a]ttorneys fees are contingent and percentage
of recovery dependant [sic] on size of estate, in no case less than 25% and not
to exceed 50%.”  Pursuant to the
contract, Delespine empowered Newton “to advise and work with an attorney in
[Delespine’s] behalf and for said attorney to file such legal actions as may be
deemed advisable by S.G. Newton III, brocator, and said attorney.”  The contract specified that “[n]either
client, brocator, nor attorney will make any type of settlement without the
informed consent of all parties to this contract and agreement, i.e: the
client, the brocator, the attorney.” 
Delespine also gave Newton a power of attorney “for the professional
management of legal services.”  

            After
they knew the value of Imogene Delespine’s estate, Newton and Delespine
executed a document entitled “Order for Disbursements,” authorizing particular
disbursements “per the Agreement for the Professional Management of Legal
Services.”  This document specifies that,
after debts are paid, Adams was to be paid one third of the proceeds of Imogene
Delespine’s estate.  Newton was to
receive 37.5% of the remainder of the net proceeds.  The remaining 62.5% was to be placed in trust
for Delespine.  The document specifically
provides that “[t]his authority for disbursement and payments as indicated
herein does supercede [sic] and finalize the agreement for payments due under
the Brocators Contract/Agreement for the professional Management of Legal
Services, and releases the estate of Imogene Delespine from further liability
under this agreement and the sole devisee, Clinton W. Delespine.”

            Attached
to Newton’s response to Delespine’s motion for summary judgment and his own
motion, is a document entitled “Synopcized [sic] Litigation Narrative” authored
by Newton explaining the events at issue as follows.  Margaret Applewhite’s estate was pending in
probate court.  Newton, acting on
Delespine’s behalf, contested the filed will. 
Newton “allowed” Delespine to file all motions and briefs that Newton
had prepared.  After conferring with
George Adams, Newton advised Delespine “to not further contest Judge Spencers
rulings in the Applewhite estate as he was vulnerable financially and could not
produce a different will as he had advised [Newton]. [Newton] prepared an
appeal of the courts decision and delivered it to [Delespine] advising him NOT
TO FILE IT.”  Newton spent 68 hours
conferencing with Delespine and drafting documents for that appeal.

            Newton
also filed a separate document entitled “Listing of Work Efforts Expended and
Services Provided by Measured Time in Regard to a Certain ‘Agreement for the
Professional Management of Legal Services’ (Brocators Contract).”  Newton explained that he reviewed documents,
questioned Delespine, and discussed the history of events in the two probate
matters with Delespine.  He researched
the probate code and applicable case law. 
He then conferred with Delespine about his belief that Delespine was “being
compromised.”  He researched forms and
drafted materials for Delespine to file, including motions, briefs, and
interrogatories.  Newton even ordered and
purchased “specialized law books” for use in these matters.  He wrote letters to George Adams informing
him of the results of his research and his “fears in regard thereto.”  Further, Newton spent 335 hours investigating
Delespine’s original conviction.  He
researched and studied case law, reviewed the briefs and records, wrote
letters, and conferred with various people. 
Thereafter, Newton advised Delespine to “drop” his appeals because they
might be considered frivolous.

            The
summary judgment evidence shows that, pursuant to the parties’ contract, Newton
did legal research and prepared legal documents involving the use of legal
skill and knowledge.  Newton unabashedly
stated that he advised Delespine regarding a will contest in the Applewhite
matter and regarding his original criminal conviction.  Under the contract, Delespine could not enter
into “any type of settlement” without Newton’s “informed consent.”

            We
acknowledge that inmates may provide legal assistance to other inmates.  See Shaw v. Murphy, 532 U.S.
223, 231, 121 S. Ct. 1475, 1480, 149 L. Ed. 2d 420 (2001) (Supervised inmate
legal assistance programs may serve valuable ends.).  These “jailhouse lawyers” are not attorneys,
but rather, laymen who have volunteered to assist others.  Peniman v. Cartwright, 550 F.
Supp. 1302, 1304 (S.D. Iowa 1982).  The
distinction between the licensed practice of law and the untrained assistance
of a “jailhouse lawyer” must be maintained. 
Id.  The allowance
of compensation for “legal fees” for jailhouse lawyering presents a probability
of abuse.  Henderson v. Ricketts,
499 F. Supp. 1066, 1068 (D. Colo. 1980). 
Further, allowing such compensation would be tantamount to setting up
nonlawyer inmates in the business of practicing law without a license.  Peniman, 550 F. Supp. at 1304; Henderson,
499 F. Supp. at 1069.

            The
record shows that Newton contracted with Delespine to represent his interests
in legal matters on a contingent fee basis and advised him of his rights and
privileges under the law thus engaging in the unauthorized practice of
law.  See Green v. Unauthorized
Practice of Law Comm., 883 S.W.2d 293, 298-99 (Tex. App.–Dallas 1994,
no writ).  Courts will not enforce or aid
in the enforcement of a contract made for the illegal practice of law.  Montgomery v. Utilities Ins. Co.,
117 S.W.2d 486, 491 (Tex. Civ. App.–Beaumont 1938), rev’d on other grounds,
134 Tex. 640, 138 S.W.2d 1062 (1940). 
Thus, the parties’ “Agreement for the Professional Management of
Contracted Legal Services” that forms the basis of Newton’s breach of contract
and fraud causes of action is not enforceable. 
In the absence of a valid contract, Newton’s breach of contract and
fraud claims fail.  See Haase,
62 S.W.3d at 798; Scott, 986 S.W.2d at 372.  Therefore, Delespine established that he was
entitled to summary judgment as a matter of law.  See Black, 797 S.W.2d at 27.

            We
next determine whether Newton’s evidence raises a fact issue.  Newton relies on his affidavit in which he
asserts that Delespine always knew he was not an attorney and the contract
provides that he was acting as “brocator,” or broker, not as an attorney.  Even if true, these facts do not raise a fact
question about whether Newton engaged in the unauthorized practice of law.  Newton further asserts that his actions were
justified because he acted pursuant to a power of attorney which gave him
authorization to act as Delespine’s attorney in fact.  

            A
power of attorney designates another as the principal’s “attorney in fact” or
agent.  Tex.
Prob. Code Ann. § 482 (Vernon 2003). 
In general, an attorney in fact is a private or special attorney,
appointed for some particular or definite purpose not connected with a
proceeding at law.  Harkins v.
Murphy & Bolanz, 51 Tex. Civ. App. 568, 570, 112 S.W. 136, 138
(Dallas 1908, writ dism’d).  An “attorney
in fact” is “one who is designated to transact business for another; a legal
agent.”  Black’s Law Dictionary 124 (7th ed. 1999); see also Tex. Prob. Code Ann. § 491 (Vernon
2003) (setting out powers of attorney in fact). 
Conversely, an attorney at law is one who practices law.  Black’s
Law Dictionary at 124.  The
authorization to act as an attorney in fact under a power of attorney is not an
authorization to practice law.  See
Harkins, 51 Tex. Civ. App. at 570, 112 S.W. at 138.  Therefore, the power of attorney does not
raise any fact questions about whether Newton engaged in the unauthorized
practice of law.

            In
the remainder of his affidavit, Newton vents his anger at Delespine for
allegedly perpetrating a fraud by promising to pay Newton for work done
pursuant to their contract upon which Newton thereafter relied when he made
financial commitments.  Newton did not
raise a fact question regarding whether he engaged in the unauthorized practice
of law.  Accordingly, the trial court did
not err in granting Delespine’s motion for summary judgment.  We overrule Newton’s first issue.

 

Disposition

            Because
issue one is dispositive of the appeal, we need not consider Newton’s second
and third issues.  See Tex. R. App. P. 47.1.

            We
affirm the trial court’s order.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

 

Opinion
delivered December 1, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)