Joe Harry BOWER, Appellant,

v.

EDWARDS COUNTY APPRAISAL DISTRICT, et al., Appellees.

No. 04–87–00578–CV.

Court of Appeals of Texas, San Antonio.

May 25, 1988.

Rehearing Denied July 6, 1988.

R. Emmett Harris, Uvalde, for appellant.

Gary C. Gilmer, Gilmer & Gilmer, Rocksprings, C. Richard Fine, Ray, Wood & Fine, Austin, for appellees.

Before CANTU and REEVES, JJ., and GERALD T. BISSETT, Assigned Justice.*

## OPINION

GERALD T. BISSETT, Assigned Justice.

This is a "pro se" appeal in a tax case challenging the appraisals made by Edwards County Appraisal District to determine ad valorem taxes levied by Edwards County for the years 1985, 1986 and 1987. The controlling legal issues presented in this appeal are identical to those presented to this Court in *Bower v. Edwards County Appraisal District, et al.*, 697 S.W.2d 528 (Tex.App.—San Antonio 1985, no writ), wherein Joe Harry Bower, plaintiff in that case and plaintiff in this case, challenged the appraisals for ad valorem tax purposes made by Edwards County Appraisal Boards for the years 1982, 1983 and 1984. That case will henceforth be referred to as the "first Bower case."

Plaintiff filed three petitions in this case against defendants Edwards County Appraisal District, hereafter the "Appraisal District," and Edwards County, wherein he challenged the appraisals made by the Appraisal District covering his ranch of 1,267 acres in Edwards County for each of the aforesaid years. The petitions were consolidated by order which was signed on July 22, 1987, and the consolidated was tried to a jury, which found that plaintiff's land (a 1,267 acre tract) was not "qualified open-space land" for each of the years 1985, 1986, and 1987, and that the appraised value of plaintiff's 1,267 acre tract of $315.00 per acre assessed against said land for each of the aforesaid years did not "exceed the market value of such land." Judgment that plaintiff take nothing by his suit was rendered. Plaintiff had appealed.

Plaintiff, in this appeal, has brought forward several points of error which he

---

* Assigned to this case by the Chief Justice of the Supreme Court of Texas as authorized pursuant to TEX.GOV'T CODE ANN. § 74.003 (Vernon 1988).

brought up in the first Bower case. In that case, in his first five points of error, plaintiff contended that the trial court erred in not holding that he was entitled to an agricultural use tax exemption for the years 1982, 1983, and 1984 because he raised wild deer on the premises. He argued in support of his points that:

(1) Raising deer for human consumption is an agricultural use;

(2) Raising vegetation that is eaten by deer that are used for human food is production of animal feed which is an agricultural use of land;

(3) Deer used for human food are livestock; and

(4) The land is unsuitable for any agricultural use other than the raising of deer for human consumption, thus Bower is acting as a reasonably prudent agriculturist qualifying his property as openspace land.

The identical points are brought up in the case now before us in this appeal.

In the first Bower case, it was established by evidence at the trial that plaintiff owned 1,267 acres in Edwards County, Texas. Part of the land borders on the Nueces River. A road cuts through part of the land, separating it into two tracts. Much of the land consists of rough-rolling land, canyons, and small mountain areas. It was also established in the first Bower case that the several tracts of land adjacent to and surrounding plaintiff's land are used for ranching purposes, and 1) that plaintiff did not do any "affirmative acts to raise the deer," but rather refrained from doing anything that would discourage their presence; 2) that plaintiff did not do anything to promote the growth of vegetation on the property, but permitted the deer to eat the vegetation that naturally grows there; and 3) agricultural uses could have been made of the land. The same evidence was introduced in the case at bar. It was shown in the instant case that axis deer (which are not classified as wild deer) grazed on the 1,267 acre tract. The fact that there was axis deer on the premises is the only factual difference in the evidence relating to whether the land was used for agricultural purposes presented at the trial in the first Bower case and the evidence presented at the trial in this case.

At the trial in the first Bower case, defendant Appraisal District introduced the Tax Board Guidelines into evidence. Plaintiff, in this sixth point of error, asserted that it was error to admit those guidelines into evidence or consider them as authority, since it was not proven that the guidelines are official publications authorized or approved by the State Property Board, and, alternatively, the Tax Board exceeded its authority in promulgating the rules. The same evidence was introduced in the instant case, and the same point of error has been brought up by plaintiff in this appeal.

In the case at bar, the following facts are uncontroverted: 1) the only use of the subject property was for the hunting of wild deer; 2) plaintiff has never raised cattle, goats, sheep, or horses on the property; 3) unlike all neighboring properties, plaintiff's land has remained unfenced and therefore cannot contain livestock; 4) no effort has been made by plaintiff to cultivate, water, or fertilize the soil or produce crops thereon; 5) were the property fenced, it would be suitable for grazing livestock such as sheep, goats, and cattle; and 6) plaintiff has never leased the land to anyone for grazing purposes.

■ The tax exemption for agricultural purposes is not available to a landowner where the sole and only use of the land is the hunting of wild deer. *See, San Marcos Consol. Ind. Sch. Dist. v. Nance,* 502 S.W. 2d 694 (Tex.1973).

Indeed, were plaintiff to attempt to raise wild deer as livestock for commercial harvesting, as he contends that he in effect does, his action would violate state law. Private ownership of wild deer is prohibited by TEX.PARKS & WILD.CODE ANN. § 1.011(a) (Vernon 1976), which makes all wild animals inside the borders of this state the property of the people of this state. There is no evidence that plaintiff *raised* axis deer on the premises. There is evidence that such deer ran "loose" on the land in question.

TEX. CONST. art. VIII, § 1–d and § 1–d–1(a) (Vernon Supp.1988) reads:

Sec. 1–d. (a) All land owned by natural persons which is designated for agricultural use in accordance with the provisions of this Section shall be assessed for all tax purposes on the consideration of only those factors relative to such agricultural use. "Agricultural use" means the raising of livestock or growing of crops, fruit, flowers, and other products of the soil under natural conditions as a business venture for profit, which business is the primary occupation and source of income of the owner.

\* \* \* \* \* \*

Sec. 1–d–1. (a) To promote the preservation of open-space land, the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity and may provide by general law for taxation of open-space land devoted to timber production on the basis of its productive capacity. The legislature by general law may provide eligibility limitations under this section and may impose sanctions in furtherance of the taxation policy of this section.

The "eligibility limitations" are found in TEX.TAX CODE ANN. § 23.51–23.57 (Vernon 1982). Section 23.51(1) defines "qualified open-space land" which is eligible for productive valuation, in pertinent part, as "land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area...." Section 23.51(2), in turn, defines "agricultural use" to include raising or keeping livestock.

Rulemaking authority to enforce these limitations is granted to the State Property Tax Board. Each appraisal district is required by law to enforce these rules in verifying that land meets the conditions for productive valuation. Effective March 22, 1982, the State Property Tax Board promulgated its "Guidelines for the Valuation of Agricultural Land" as an amendment to its rule 161.1 (237.08.00.001). The Guidelines, § 6.01, defines "agricultural use" for purposes of determining qualifications for appraisal under TEX. CONST. art. VIII, § 1–d–1, imparting to it the meaning recognized by Texas courts in decisions arising out of interpretation of art. VIII, § 1–d of the Texas Constitution.

Section 7.b, page 15, of the State Property Tax Board Guidelines mandates the following eligibility standard:

Where hunting and recreational use of the land occur so as to be the principal use of the land, such land is *not eligible* as qualified open-space land. (Emphasis added.)

Additionally, section 6.d, page 15, of the Guidelines defines livestock to mean:

animals of any kind kept or raised ... but excludes those animals, such as wild deer and wild turkey, owned by the State of Texas and classified as wild animals indigenous to this state.

Further authority for distinguishing the use of land for deer hunting from qualifying uses is found in TEX.TAX CODE ANN. § 23.51(4). As a step in calculating the productive value of a property, the chief appraiser must estimate its "net to land," or the average annual net income which the property received or should have received. Net to land is defined in section 23.51(4) as the sum of:

the average annual net income derived from the use of open-space land that would have been earned from the land during the five-year period preceding the appraisal by an owner using ordinary prudence in the management of the land and the farm crops or livestock produced or supported on the land *and, in addition, any income received from hunting or recreational leases.* (Emphasis added.)

It is clear, then, that the Legislature did not intend the term "livestock" to include deer or other wild animals which are hunted, or for hunting to be a qualified use of open-space land. Otherwise, the language emphasized above would be superfluous. There is no evidence in the record which would support a finding that any part of the land was devoted principally to agri-

cultural use or that the land was, in fact, qualified as "open-space land."

At the trial, the Appraisal District offered into evidence an officially published copy of the "Guidelines for the Valuation of Agricultural Land" promulgated by the State Property Tax Board as an agency rule. Plaintiff objected on the ground that the State Property Tax Board exceeded its authority in adopting this rule, but did not deny the authenticity of the rule. The trial court overruled the objection and admitted the exhibit.

This Court in the first Bower case, held that the State Property Tax Board acted within its authority in promulgating these very rules. Plaintiff offers no new attack herein, and this Court's previous decision is uniformly supported by the judicial tests for determining the validity of administrative rules.

 It is presumed that administrative regulations are valid, and the burden of demonstrating their invalidity is on the challenging party. *Browning–Ferris, Inc. v. Texas Dept. of Health,* 625 S.W.2d 764, 767 (Tex.App.—Austin 1981, writ ref'd n.r. e.). Valid rules and regulations promulgated by an administrative agency acting within its statutory authority have the force and effect of legislation. *Lewis v. Jacksonville Bldg. and Loan Ass'n,* 540 S.W.2d 307, 310 (Tex.1976).

 Furthermore, the State Property Tax Board rule at issue is a "legislative" administrative rule because it is based on a grant of legislative power. 1 K. DAVIS, ADMINISTRATIVE LAW TREATISE, § 5.03 (1958). The courts must uphold "legislative" administrative rules if they are reasonable. Such rules need only be based on some legitimate position by the administrative agency involved. The courts will presume that facts exist which justify the promulgation of "legislative" administrative rules. *Bullock v. Hewlett–Packard Co.,* 628 S.W.2d 754, 756 (Tex. 1982).

 To the extent that plaintiff now attacks *the authenticity* of the exhibit, such objection is waived since he did not make such an objection in the trial court. TEX. R.CIV.P. 272. Moreover, under TEX.R. EVID. 902(5), the tendered exhibit was self-authenticating. The document is an official publication of the State Property Tax Board, a public authority, pursuant to the provisions of TEX.TAX CODE ANN. §§ 5.05(a)(2) and 23.52(d) (Vernon 1982). The trial court properly admitted the State Property Tax Board Guidelines into evidence.

Plaintiff further complains of the definitions submitted by the trial court in the charge to the court and the refusal of the court to submit the definitions requested by him. The definitions contained in the charge read, as follows:

"Qualified open-space land" means the land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use for five of the preceding seven years or land that is used principally as an ecological laboratory by a public or private college or university. Qualified open-space land includes all appurtenances to the land. For the purposes of this subdivision, appurtenances to the land means private roads, dams, reservoirs, water wells, canals, ditches, terraces, and other reshapings of the soil, fence, and riparian rights. Where hunting and recreational use of the land occur so as to be secondary and incidental to an otherwise principal farm or ranch use, such land is eligible as qualified open-space land. Where hunting and recreational use of the land occur so as to be the principal use of the land, such land is not eligible as qualified open-space land.

"Agricultural use" includes but is not limited to the following activities: cultivating the soil, producing crops for human food, animal feed, or planting seed or for the production of fibers; floriculture, viticulture, and horticulture; raising or keeping livestock; and planting cover crops or leaving land idle for the purpose of participating in any governmental program or normal crop or livestock rotation procedure.

"Agricultural use to the degree of intensity generally accepted in the area" shall mean farming or ranching to the extent that the typically prudent manager in the area of the taxing unit would farm or ranch on an identifiable and substantial tract of land when the tract is devoted principally to agricultural use. Any economic inability of a landowner to fence property to enable him to use the land for grazing livestock is not a relevant factor in determining whether such land is entitled to open-space valuation.

"Principally" or "principal use" shall mean the more important use in comparison with other uses to which the land is put.

"Livestock" shall mean animals of any kind kept or raised such as, but not limited to, meat and dairy cattle, horses, goats, sheep, chickens, axis deer, mouflon sheep and other animals, but expressly excludes those animals, such as wild deer and wild turkey, owned by the State of Texas and classified as wild animals indigenous to this state.

The definitions which plaintiff requested (and were refused) read, as follows:

"Qualified open-space land" means land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and has been devoted principally to agricultural use for five of the preceding seven years or land that is used principally as an ecological laboratory by a public or private college or university. Qualified open-space land includes all appurtenances to the land. Appurtenances to the land means private roads, dams, reservoirs, water wells, canals, ditches, terraces, and other reshaping of the soil, fences, and riparian rights. Land is not disqualified from being qualified open-space land if it is used principally for the purpose of raising deer that are used for human food.

*Definition No. 2*

"Agricultural use to the degree of intensity generally accepted in the area" means land that is devoted principally to agricultural use, as is defined by Section 23.51(2) of Property Tax Code, to the extent that a prudent agriculturist would use it.

*Definition No. 3*

"Agricultural use" includes but is not limited to the following activities: cultivating the soil, producing crops for human food, animal feed, or planting seed or for the production of fiber; floriculture, viticulture, and horticulture; raising or keeping livestock, and planting cover crops or leaving land idle for the purpose of participating in any governmental program or normal crop or livestock rotation procedure. Deer, that are used for human food, are livestock. Raising vegetation that is eaten by deer, that are used for human food, is producing and growing animal feed and is agricultural use of land.

■ The trial court's definitions in the charge to the jury track the relevant provisions of the Texas Property Tax Code and the State Property Tax Board Rules. Plaintiff's requested definitions radically depart from the applicable statutes and rules. The trial court correctly refused to submit plaintiff's requested definitions.

■ Plaintiff also asserts, in his first point of error, that "the trial court erred because it did not rule on the questions of law that plaintiff raised in his pleadings before the start of the jury trial." The point has no merit. Neither the pleadings of plaintiff nor his point of error state any question of law upon which the trial court could have ruled prior to trial. Counsel for the plaintiff did not, prior to the commencement of trial, ask the trial judge to rule on any particular question of law.

Finally, plaintiff, in his second point of error, contends that "the trial court erred because it did not rule that Sandra Madden, who is the Chief Appraiser of Edwards County Appraisal District, was defendants' only expert witness." We do not agree.

The record reveals that the Appraisal District called two expert witnesses. First, Sandra Madden, the Chief Appraiser for Edwards County Appraisal District was called by the appraisal district as an expert witness. Next, it called Paul Bierschwale,

the Chief Appraiser for Kimble County Appraisal District, as an expert witness. Plaintiff, at the time Mr. Bierschwale was called as a witness, did not object to his testifying on behalf of defendants in this case.

■ Plaintiff's contention that the trial court was required to limit defendants to one witness *of his choice* is arbitrary, groundless, and repugnant to fundamental judicial rights. He offers no authority for his second point, and none exists. While he may have accurately anticipated that the Appraisal District could prevail with only one witness, a litigant's basic rights are not lightly disregarded, and they should be curtailed only when formally sanctioned under the circumstances. *Rainwater v. Haddox,* 544 S.W.2d 729, 732 (Tex.Civ.App.—Amarillo 1976, no writ). Additionally, any specific objection plaintiff may have had to the introduction of additional testimony was waived by his failure to object to such additional witness testifying when he was called. *Richardson v. Green,* 677 S.W.2d 497, 501 (Tex.1984).

We have considered all of plaintiff's points of error. None have any merit and they are all overruled.

The Appraisal District requests that this Court award it an amount equal to ten times the total costs as damages against plaintiff as authorized by TEX.R.APP.P. 84. The rule, in pertinent part, provides:

> In civil cases where the court shall determine that an appeal or writ of error has been taken for delay and without sufficient cause, then the appellate court may, as part of its judgment, award each prevailing appellee or respondent an amount not to exceed ten percent of the amount of damages awarded to such appellee or respondent as damages against such appellant or petitioner. If there is no amount awarded to the prevailing appellee or respondent as money damages, then the appellate court may award, as part of its judgment, each prevailing appellee or respondent an amount not to exceed ten times the total taxable costs as damages against such appellant or petitioner.

Plaintiff, in response to the following questions propounded to him on cross-examination, testified, as follows:

Q: Mr. Bower, are the contentions that— your contentions here that your property should be appraised as agricultural land, are those the same contentions that you made at the trial of your previous lawsuits?

A: That's right.

Q: Are you familiar with the Court of Appeals holding in your previous lawsuit?

A: Yes, and I'm trying to get the lawsuit appealed into the Supreme Court of Texas, and they haven't ruled yet.

In *Bullock v. Sage Energy Co.,* 728 S.W. 2d 465 (Tex.App.—Austin 1987, writ ref'd n.r.e.), the Comptroller intentionally disregarded an unpublished opinion of the Austin Court of Appeals in a final judgment to which the Comptroller was a party. Instead, the Comptroller appealed the same legal issue on the theory that the prior, unreported case had no precedential value. The Court assessed damages against the Comptroller under Rule 84, holding that while an unpublished opinion was not *stare decisis,* a party is not free to ignore the judgment in the prior case.

■ Before assessing a penalty for a frivolous appeal under Rule 84, the appellate court must determine that the appellant did not have a reasonable ground to believe that the judgment of the trial court would be reversed, and the appeal was not taken in good faith, but for delay only. *Dallas County Appraisal District v. The Leaves, Inc.,* 742 S.W.2d 424 (Tex.App.— Dallas 1987, writ denied); *Stewart v. Texco Newspapers, Inc.,* 734 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Select Insurance Co. v. Patton,* 506 S.W.2d 677, 688 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.).

This Court, in the first Bower case held that plaintiff's land was not used for agricultural purposes, and, therefore, was not entitled to an agricultural tax exemption from the defendants Edwards County Appraisal District and Edwards County for the years 1982, 1983, and 1984. Thus, the law of the case was established.

Plaintiff, in the case at bar, admitted at the trial of this case that his contentions were the same as those made in the first Bower case. The parties, the facts established (with the single exception that axis deer grazed on the subject land), and the controlling legal issues in this case are identical to those presented by the plaintiff in his previous appeal. A review of the record in its entirety convinces us that plaintiff deliberately chose to ignore the judgment rendered in the first Bower case, as well as the law of the case. No reasonable ground has been shown which would justify plaintiff in believing that the judgment in the instant case would be in his favor or that the judgment which was rendered would be reversed on appeal. We hold that this appeal is frivolous, was taken for delay only and without sufficient cause, and that plaintiff has delayed the final resolution of the issues by this appeal. Therefore, we sustain defendants' cross-point and grant their request that a penalty be assessed against plaintiff under Rule 84.

The judgment of the trial court is AFFIRMED, and the Appraisal District of Edwards County and Edwards County, defendants-appellees, are awarded as damages against Joe Harry Bower, plaintiff-appellant, an amount of money equal to three times the total taxable costs in this case.