**In re NOLO PRESS/FOLK LAW, INC., Relator.**

No. 98–0724.

Supreme Court of Texas.

Argued Oct. 21, 1998.

Decided April 15, 1999.

R. James George, Peter D. Kennedy, Austin, for Relator.

James Donald Blume, Bretton C. Gerard, Dallas, Wesley V. Geary, Plano, J. Rodney Gilstrap, Marshall, Larry W. Lay, Austin, Clint W. Lewis, Beaumont, James N. Rader, Steven W. Young, Linda A. Acevedo, Austin, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice OWEN, Justice BAKER, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES join.

In this original proceeding, Nolo Press, Inc., a publisher of self-help legal books and computer software, petitions for a writ of mandamus compelling the Unauthorized Practice of Law Committee to produce documents and information related to the Committee's operations in general, and in particular, to its current investigation into whether certain of Nolo Press's publications constitute the unauthorized practice of law in Texas. Alternatively, Nolo Press requests clarification or modification of this Court's September 16, 1986 Order[1] that limits disclosure of Committee records. We hold that the Court lacks jurisdiction to grant the requested relief by mandamus, and that Nolo Press's petition should be treated in part as an administrative rather than a judicial matter. By administrative order issued today,[2] we vacate the Court's 1986 Order to permit disclosure of Committee records as provided by newly adopted Rule 12 of the Rules of Judicial Administration.[3]

## I

We begin by describing the Unauthorized Practice Committee and then summarizing the events which have given rise to this proceeding.

### A

■ The Supreme Court of Texas has inherent power to regulate the practice of law in Texas for the benefit and protection of the justice system and the people as a whole.[4] The Court's inherent power is

---

1. Supplemental Order to the November 17, 1980 Order Adopting Rules for the Unauthorized Practice of Law Committee (Tex. Sept. 16, 1986) (hereinafter "1986 Order") (*infra,* Appendix II).

2. In re Petition of Nolo Press, Inc. to Amend Rules Governing the Unauthorized Practice of Law Committee, Misc. Docket No. 99–9082 (Tex. Apr. 15, 1999) (per curiam).

3. Final Approval of Rule 12 of the Texas Rules of Judicial Administration and of Canon

3(C)(5) of the Code of Judicial Conduct, Misc. Docket No. 99–9058 (Tex. Mar. 24, 1999) (adopting Rule 12 of the Rules of Judicial Administration, effective April 1, 1999), *reprinted in* 62 TEX. BAR J. 450 (May 1999).

4. *See State Bar of Texas v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994); *Unauthorized Practice Comm. v. Cortez,* 692 S.W.2d 47, 51 (Tex. 1985). *Cf. Sperry v. Florida,* 373 U.S. 379,

derived in part from Article II, Section 1 of the Texas Constitution, which divides State governmental power among three departments.[5] The authority conveyed to the Supreme Court by this constitutional provision includes the regulation of judicial affairs and the direction of the administration of justice in the judicial department.[6] Within this authority is the power to govern the practice of law.[7] The Court's inherent power under Article II, Section I to regulate Texas law practice is assisted by statute, primarily the State Bar Act.[8]

■ The practice of law in Texas is restricted to members of the State Bar, with limited exceptions permitted by this Court.[9] The "practice of law" is defined in the State Bar Act as:

the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.[10]

This statutory definition, however, is by its own terms "not exclusive and does not deprive the judicial branch of the power and authority under both this chapter and the adjudicated cases to determine whether other services and acts not enumerated may constitute the practice of law." [11] From time to time the Legislature has imposed civil and criminal penalties on the unauthorized practice of law.[12] Most re-

383, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963) (recognizing that a state has a "substantial interest in regulating the practice of law within the State"); *Hexter Title & Abstract Co. v. Grievance Comm.*, 142 Tex. 506, 179 S.W.2d 946, 948 (1944) ("The State has a vital interest in the regulation of the practice of law for the benefit and protection of the people as a whole").

5. *Gomez*, 891 S.W.2d at 245; *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–399 (Tex. 1979) (holding that "[t]he *inherent* judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities", and "also springs from the doctrine of separation of powers between the three governmental branches", "to enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity.") (emphasis in original).

6. *Gomez*, 891 S.W.2d at 245.

7. *Id.* ("Because the admission and practice of Texas attorneys is inextricably intertwined with the administration of justice, the Court must have the power to regulate these activities in order to fulfill its constitutional role."). *See also* John L. Hill & David C. Kent, *Administrative Law*, 35 Sw. L.J. 465, 468–470 (1981).

8. Tex. Gov't Code §§ 81.001–.114 (formerly Tex.Rev.Civ. Stat. Ann. art. 320a–1); *id.*

§ 81.011(b) ("This chapter [the State Bar Act] is in aid of the judicial department's powers under the constitution to regulate the practice of law, and not to the exclusion of those powers."). All statutory references are to the Government Code unless otherwise noted.

9. *See* Tex. Gov't Code § 81.102.

10. *Id.* § 81.101(a).

11. *Id.* § 81.101(b). *Accord, Cortez*, 692 S.W.2d at 51 ("independently of any statutory provisions as to what may constitute practice of law, the court has the duty and the inherent power to determine in each case what constitutes the practice of the law, and to inhibit persons from engaging in the practice of law without having obtained a license to do so" (quoting *Grievance Comm. v. Coryell*, 190 S.W.2d 130, 131 (Tex.Civ.App.—Austin 1945, writ ref'd w.o.m.), and citing *Grievance Comm. v. Dean*, 190 S.W.2d 126, 128–129 (Tex.Civ.App.—Austin 1945, no writ) (concluding that in regulating the practice of law, the Legislature acts "not to the exclusion of, nor in denial of, the constitutional powers of the judicial branch of the government"))).

12. *See* Act approved Jan. 26, 1839, 3rd Cong., R.S., § 3, *reprinted in* 2 H.P.N. Gammel, The Laws of Texas 1822–1897, at 136, 137 (Austin, Gammel Book Co. 1898) (imposing a $500 civil penalty on unlicensed practitioners for every case prosecuted or defended); Act approved May 12, 1846, 1st Leg., R.S., §§ 7, 9,

cently, in 1993, the Legislature made the unauthorized practice of law, defined somewhat differently in the Penal Code than in the State Bar Act, a Class A misdemeanor or, for multiple convictions, a third degree felony.[13]

The entity charged with policing the unauthorized practice of law is the Unauthorized Practice of Law Committee. The first such entity, the Committee on the Lay and Corporate Encroachment of the Practice of Law, was created in 1932 by the voluntary Texas Bar Association and its members appointed by the Association's president.[14] The Committee's sole purpose was to draft and urge enactment of a statute defining the practice of law and prohibiting the unauthorized practice. That goal having been accomplished in the 1933 legislative session,[15] the Committee was made a standing committee of the Bar Association with the name, the Committee on Unlawful Practice of the Law.[16] The Committee's purposes were enlarged to include informing local bar associations about the problems of the unauthorized practice of law, investigating possible violations of the new statute, and enforcing the statute by injunctions and criminal prosecutions.[17] Shortly after the integrated State Bar of Texas was formed in 1939,[18] this Court promulgated rules governing its operations, which called for local grievance committees to investigate and prosecute the unauthorized practice of law.[19] The State Bar also created a state committee on unauthorized practice to assist the local grievance committees, stimulate interest, and disseminate information.[20] The state committee was not a standing committee, however, and its role was largely advisory; investigation and prosecution of the unauthorized practice of law was left to local grievance committees.[21] Rules amendments adopted by the bar and approved by this Court in 1952 established the Unauthorized Practice of Law Committee as a permanent entity in the State Bar administration and gave the Committee investigative and prosecutorial powers, as well as the responsibility to inform the State Bar and others about the unauthorized practice of law.[22] In 1979, the Legislature amended the State Bar Act to require that members of the UPL Committee be appointed by this Court rather than by the president of the State

reprinted in GAMMEL., supra, at 1551, 1553 (repealed 1879) (imposing a fine of $50 to $500 for every offense by an unlicensed practitioner, and authorizing any two or more practicing attorneys to institute prosecution); Act of May 31, 1933, 43rd Leg., R.S., ch. 238, 1933 Tex. Gen. Laws 835, repealed by Act of May 19, 1949, 51st Leg., R.S., ch. 301, 1949 Tex. Gen. Laws 548.

13. TEX. PENAL CODE § 38.123. See also id. § 38.122 (prohibiting falsely holding oneself out as a lawyer); Satterwhite v. State, 979 S.W.2d 626 (Tex.Crim.App.1998) (affirming felony conviction under § 38.122 of an attorney suspended from practice for failing to timely pay his annual bar dues).

14. Texas Bar Ass'n, Proceedings of the Fifty–First Annual Meeting of the Texas Bar Association, TEX. L.REV., Oct. 1932, at 152, 153–154, 169 (Texas Bar Ass'n Proceedings vol. 51).

15. Act of May 31, 1933, 43rd Leg., R.S., ch. 238, 1933 Tex. Gen. Laws 835, repealed by Act of May 19, 1949, 51st Leg., R.S., ch. 301, 1949 Tex. Gen. Laws 548.

16. Texas Bar Ass'n, Proceedings of the Fifty–Second Annual Meeting of the Texas Bar Association, TEX. L.REV., Oct. 1933, at 168, 173–174 (Texas Bar Ass'n Proceedings vol. 52).

17. Id. at 173–174.

18. Act of April 6, 1939, 46th Leg., R.S., ch. 1, 1939 Tex. Gen. Laws 64.

19. TEX. STATE BAR RULES OF CONDUCT art. XII, § 35 (1940).

20. See Melvin F. Adler, The Unauthorized Practice Committee Begins, 7 TEX. BAR J. 400 (1940).

21. See, e.g., Hexter Title & Abstract Co. v. Grievance Comm., 142 Tex. 506, 179 S.W.2d 946 (1944) (holding that local grievance committee had standing to prosecute the unauthorized practice of law).

22. 15 TEX. BAR J. 59, 65–66 (1952).

Bar.[23] Since then the Court has appointed Committee members.

■ By Order dated November 17, 1980,[24] the Court promulgated rules governing "the Unauthorized Practice of Law Committee for the State Bar of Texas". The Committee's duties are prescribed as follows:

> The Committee shall keep the Court and the State Bar informed with respect to the unauthorized practice of law by laypersons and lay agencies and the participation of attorneys therein, and concerning methods for the prevention thereof. The Committee shall seek the elimination of the unauthorized practice by action and methods as may be appropriate for that purpose, including the filing of suits in the name of the Committee.[25]

Section 81.104 of the State Bar Act defines the UPL Committee's responsibilities similarly.[26] The UPL Committee is thus empowered, not to adjudicate whether activities constitute the unauthorized practice of law, but to seek adjudication of that issue in appropriate forums, and to provide information concerning such activities to this Court and the State Bar of Texas. To further these purposes, the Court's 1980 Order provides that the UPL Committee may adopt rules and procedures to guide its operations[27] and may subpoena witnesses and tangible evidence.[28] But the Committee has no authority to adjudicate whether a particular activity constitutes an unauthorized practice of law; indeed, the Order prohibits the Committee from issuing even advisory opinions concerning the unauthorized practice of law.[29]

Section 81.103 and the 1980 Order[30] both provide that the UPL Committee is comprised of nine members, at least three of whom must not be lawyers, appointed by this Court for staggered three-year terms. Members receive no monetary compensation for their service, but Section 81.103(f) and the 1980 Order[31] require the State Bar to pay the Committee's necessary and actual expenses. (The State Bar is, and is declared by statute to be, a public corporation and an administrative agency of the judicial department of government.[32]) Section 81.106 gives the UPL Committee and persons to whom it delegates authority immunity from liability "for any damages for an act or omission in the course of the official duties of the committee", and gives complainants and witnesses before the Committee the same immunity they would have in a judicial proceeding. The 1980 Order provides a similar grant of immunity.[33] Section 81.105 provides that the UPL Committee is not prohibited from using local subcommittees, and the 1980 Order expressly authorizes the appointment of subcommittees

---

23. Act of May 28, 1979, 66th Leg., R.S., ch. 510, § 19(b), 1979 Tex. Gen. Laws 1081, 1091.

24. Order Approving Rules For The Unauthorized Practice of Law Committee (Tex. Nov. 17, 1980) (hereinafter "1980 Order") (*infra*, Appendix I).

25. *Id.* § 2.

26. "The unauthorized practice of law committee shall:

(1) keep the supreme court and the state bar informed with respect to:
  (A) the unauthorized practice of law by lay persons and lay agencies and the participation of attorneys in that unauthorized practice of law; and

(B) methods for the prevention of the unauthorized practice of law; and
(2) seek the elimination of the unauthorized practice of law by appropriate actions and methods, including the filing of suits in the name of the committee."

27. 1980 Order, § 3 (*infra*, Appendix I).

28. *Id.* § 5.

29. *Id.* § 7.

30. *Id.* § 1.

31. *Id.* § 11.

32. Tex. Gov't Code § 81.011(a).

33. 1980 Order, § 10 (*infra*, Appendix I).

of one or more persons.[34] Finally, this Court's September 16, 1986 Order prohibits disclosure of the Committee's records except for use in enforcement proceedings, to satisfy any requirements of the State Bar Act, to assist law enforcement agencies and prosecutors, and in furtherance of this Court's orders.[35]

The UPL Committee's authority to institute legal proceedings to prohibit the unauthorized practice of law is not exclusive. Such proceedings have been prosecuted by grievance committees,[36] local bar associations,[37] and groups of attorneys.[38] Criminal proceedings would ordinarily, of course, be conducted by criminal prosecuting attorneys.

## B

In June 1997, the Chair of the Houston UPL Subcommittee wrote Nolo Press the following letter:

The Unauthorized Practice of Law Committee has received information that you may have engaged in activities which constitute the unauthorized practice of law. More specifically, it is our information that you have prepared and distributed to citizens of the State of Texas certain software and a User's Guide which represent that your forms as well as the suggested information to be inserted will properly affect legal rights. This software includes "Living Trust Maker—2.0". Your activities, the representations made, the form of the presentations and other aspects of these programs may constitute the unauthorized practice of law.

The Unauthorized Practice of Law Committee is appointed by the Supreme Court of the State of Texas, and is charged by statute to enforce the State Bar Act. Persons not licensed by the Supreme Court as attorneys at law are prohibited from performing acts that constitute the practice of law.

You are requested to provide the undersigned investigator with a written response to the foregoing description of your activities in connection therewith. You are requested to include in your initial response the names, addresses and states of licensure of any attorneys who contributed to the contents of the software and/or User's Guide. Your written response should be received by me within *ten (10) days* of the date of this letter. Your failure to respond could mean that the Committee will consider the allegations and information before it without benefit of your reply.

You are entitled to be represented in this matter by an attorney of your own choosing. We look forward to your response.

The record before us reflects that Nolo Press responded to this letter, although the response is not included in the record.[39]

The next event evidenced in our record occurred in March 1998, when an investigator for the Dallas UPL Subcommittee wrote Nolo Press that he had been assigned to investigate the complaint initially considered by the Houston Subcommittee, and that the Dallas Subcommittee had scheduled a brief ("normally" thirty to forty-five minutes, according to the letter), informal hearing for August 20, 1998, "to

34. *Id.* § 4.

35. 1986 Order (*infra,* Appendix II).

36. *E.g., Rattikin Title Co. v. Grievance Comm.,* 272 S.W.2d 948 (Tex.Civ.App.—Fort Worth 1954, no writ).

37. *E.g., San Antonio Bar Ass'n v. Guardian Abstract & Title Co.,* 156 Tex. 7, 291 S.W.2d 697 (1956).

38. *E.g., Touchy v. Houston Legal Found.,* 432 S.W.2d 690 (Tex.1968) (concluding that practicing attorneys had standing to bring suit to enjoin the unauthorized practice of law).

39. Nolo and the Committee both cite to Nolo's website, http://www.nolo.com for a list and the text of their correspondence.

investigate and consider allegations that Nolo Press may have engaged in the unauthorized practice of law, as prohibited by [the State Bar Act]." The letter continued:

> We request that an appropriate representative of Nolo Press attend that hearing. The failure of Nolo Press to have a representative present at the hearing could mean that the UPLC will consider the allegations and information before it without benefit of the information that such a representative could provide.

In response, Nolo Press requested additional information about the complaint, the investigation, and the hearing process, as well as more general information about the UPL Committee's activities and authority, all "[a]s part of deciding whether to appear" at the August hearing. The Dallas Subcommittee refused to provide Nolo Press information on complaints or possible witnesses against Nolo Press on the ground that such information was confidential. However, in answer to Nolo Press's other questions, the Subcommittee stated that investigatory hearings were informal and not open to the public, that testimony was not taken under oath, and that Nolo Press would be allowed to present evidence at the hearing subject to the discretion of the Subcommittee Chair. The Subcommittee added:

> Neither the UPLC nor its Dallas Subcommittee has the power to ban anything. After the investigative hearing, the choices available to the Dallas Subcommittee are (i) to continue the investigation, or (ii) to close the file on the complaint, or (iii) to recommend to the UPLC that suit be filed to enjoin Nolo Press from engaging in whatever activities the Subcommittee believes constitute the unauthorized practice of law. The UPLC may accept or reject the Subcommittee's recommendation. If the Subcommittee recommends that an injunction suit be filed and the UPLC accepts that recommendation and authorizes the filing of such a suit, the suit

will be filed in a court of competent jurisdiction.

[Two of your questions] imply that the UPLC or its Dallas Subcommittee has alleged, or has taken the position, that Nolo Press is engaged in the unauthorized practice of law. I hope you realize from some of the answers [provided in the letter] that neither the UPLC nor its Dallas Subcommittee has made any such allegations or taken any such position. We are merely investigating a complaint. We have not reached any conclusions or taken any position with respect to the activities of Nolo Press.

Nolo Press requested and received from the Clerk of this Court copies of the 1980 and 1986 Orders regarding the UPL Committee. Again, Nolo Press asked the Dallas Subcommittee to provide the details of the complaints against it, expressing its concern that an unfavorable decision had already been made and that "this hearing is just window dressing." The Subcommittee again refused to provide the requested information but explained:

> [We are] sorry that you believe Nolo Press is not getting a fair shake and you believe the UPLC has made up its mind. We are interested in what Nolo Press has to say and the UPLC has not made any decision on filing suit to seek an injunction.
>
> For clarification purposes, the process that we will follow is a hearing will be conducted to obtain information on whether any activities of Nolo Press, including the distribution of Living Trustmaker or other products, may constitute the unauthorized practice of law. After that hearing, the Dallas Subcommittee will then decide whether to dismiss the investigation, seek more information, or recommend to the State Unauthorized Practice of Law Committee that a lawsuit be filed to enjoin Nolo Press from unauthorized practice of law. The State Committee will then take up the matter and decide if suit should be authorized. If suit is not au-

thorized, there is no lawsuit; if suit is authorized, a lawsuit seeking injunctive relief will be brought in a court of competent jurisdiction. If a lawsuit is filed, the court will decide whether Nolo Press has committed unauthorized practice of law and whether injunctive relief is appropriate.

Please note the courts, **not** UPLC determine whether unauthorized practice of law has occurred and the relief, if any, to be afforded. Please be aware that the Texas legislature has defined what constitutes the practice of law. *See* TEX. GOV'T CODE ANN. § 81.101 (Vernon 1988).

(Emphasis in original.)

Nolo Press and the Dallas Subcommittee continued to exchange correspondence without resolving their differences. At one point, Nolo Press invoked the Public Information Act[40] in its request for information, but the Subcommittee refused the request on the ground that the Act does not apply to the judiciary.[41] Instead, the Subcommittee continued to rely on the 1986 Order in refusing to produce the information Nolo Press requested.

Four weeks prior to the scheduled August hearing, Nolo Press petitioned this Court for a writ of mandamus compelling the UPL Committee to produce the following information: the names of its subcommittee members; the dates, times, locations, agendas, and minutes of past and future meetings; copies of the Committee's internal rules and procedures; and all internal documents related to the Subcommittee's investigation of Nolo Press. Alternatively, Nolo Press requested the Court to "construe, clarify or modify" its 1986 Order to provide that "the UPL Committee is required to disclose to the public upon request the requested documents and information." We granted Nolo Press's petition and stayed the Subcommittee's hearing.[42]

## II

■ Before we can consider whether Nolo Press is entitled to mandamus relief, we must first determine whether we have jurisdiction to issue such relief. Generally, the district court has exclusive original jurisdiction over mandamus proceedings except when the Constitution or a statute confers original jurisdiction on another tribunal.[43] This Court may entertain original mandamus proceedings only when jurisdiction is conferred by the Constitution or by statute.[44] Nolo Press asserts three bases for this Court's jurisdiction over this proceeding.

■ First, Nolo Press contends that jurisdiction lies under Article V, Section 3 of the Texas Constitution, which empowers this Court to issue writs of mandamus "as may be necessary to enforce its jurisdiction." But we have repeatedly construed this provision as authorizing the Court to issue writs only when a lower court's action threatens to impair our appellate jurisdiction or nullify the effect of our judgments.[45] No such threat is presented here, and therefore Article V, Section 3 does not confer jurisdiction over this proceeding.

■ Nolo Press next contends that jurisdiction lies under Section 22.002(a) of the

40. TEX. GOV'T CODE §§ 552.001–.353.

41. *Id.* §§ 552.003(1)(B), 552.221(a).

42. 41 TEX. SUP.CT. J. 1310 (Aug. 6, 1998).

43. TEX. CONST. art. V, § 8; TEX. GOV'T CODE § 24.007; *A & T Consultants, Inc. v. Sharp,* 904 S.W.2d 668, 671–672 (Tex.1995).

44. *Chenault v. Phillips,* 914 S.W.2d 140, 141 (Tex.1996) (per curiam).

45. *City of Orange v. Clark,* 627 S.W.2d 146, 147 (Tex.1982) (per curiam); *Stoner v. Massey,* 586 S.W.2d 843, 846 (Tex.1979); *Texas Aeronautics Comm'n v. Betts,* 469 S.W.2d 394, 398–399 (Tex.1971); *Sparenberg v. Lattimore,* 134 Tex. 671, 139 S.W.2d 77, 78, 80 (1940); *Hovey v. Shepherd,* 105 Tex. 237, 147 S.W. 224, 224 (1912).

Government Code, which authorizes the Court to issue writs of mandamus against "any officer of state government except the governor". We have construed this phrase to refer, not to every State official at every level, but only to chief administrative officers—the heads of State departments and agencies who are charged with the general administration of State affairs.[46] Important as the UPL Committee members are, they are not within the small circle to which Section 22.002(a) refers. The UPL Committee is no different, in this respect, from other boards and commissions against which our original mandamus jurisdiction does not run.[47]

■■■■ Finally, Nolo Press contends that jurisdiction lies under Article II, Section 1 of the Texas Constitution in combination with the provisions of the State Bar Act dealing with the UPL Committee. Article II, Section 1 requires a division of power among the three departments of State government. Nolo Press argues that because this Court appoints the UPL Committee and has inherent power to regulate the practice of law, it has jurisdiction to mandamus the Committee. The premises of this argument are true, but they do not support the conclusion. As we have previously held, "the Court's inherent powers, such as the power to regulate the bar, are *administrative* powers, not *jurisdictional* powers."[48] The Court's administrative powers imply no mandamus jurisdiction. It is true that those administrative powers necessarily include enforcement of the Court's regulations by order, and that such orders resemble writs of mandamus in that both may compel specific actions. But that one similarity does not equate the two kinds of directives. The bases for issuing a writ of mandamus are more restrictive than those for issuing an administrative order. "Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law."[49] Administrative orders direct action irrespective of whether there has been an abuse of discretion or a violation of a legal duty. Indeed, such orders are routinely used to set rules and policies for entities operating within the judicial department. We have not previously referred to such orders as writs of mandamus, or inferred mandamus jurisdiction from Article II, Section 1, and we decline to do so today.[50]

Accordingly, we conclude that we do not have jurisdiction to issue mandamus against the UPL Committee or any of its members on any basis Nolo Press asserts.

## III

As an alternative to mandamus relief, Nolo Press urges that we consider its petition as an administrative matter and grant it essentially the same relief it seeks by mandamus, either by directing the UPL Committee to produce the information and materials Nolo Press has requested or by declaring that our 1986 Order does not preclude such production.

■■■ Whether we should treat a petition as an administrative rather than a judicial matter depends on the nature of the request and the availability of a judicial forum. In *State Bar of Texas v. Go-*

---

**46.** *Chemical Bank & Trust Co. v. Falkner,* 369 S.W.2d 427, 430–31 (Tex.1963); *Betts v. Johnson,* 96 Tex. 360, 73 S.W. 4, 5 (1903).

**47.** *Superior Oil Co. v. Sadler,* 458 S.W.2d 55, 55–56 (Tex.1970) (per curiam); *Betts,* 73 S.W. at 5.

**48.** *Chenault,* 914 S.W.2d at 142.

**49.** *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985)).

**50.** *Cf. Jones v. Commission for Lawyer Discipline,* 917 S.W.2d 4 (Tex.1995) (per curiam) (dismissing petition for writ of mandamus against the Commission for Lawyer Discipline, the Board of Law Examiners and its executive director, and the Clerk of this Court as moot without discussing jurisdiction).

*mez*,[51] we concluded that whether Texas attorneys should be compelled to provide free legal services to persons who cannot pay for them was an administrative matter. The plaintiffs in that case could not obtain the relief they sought unless this Court promulgated additional rules governing the State Bar. Promulgation of rules is clearly an administrative matter rather than a judicial one.[52] Furthermore, because only this Court could grant plaintiffs relief, plaintiffs' claims in the district court did not present a justiciable controversy, and hence that court had no jurisdiction to entertain them. We explained, however, that not

> all remedies bearing upon the regulation of the legal profession would be unacceptable infringements on the inherent powers of the Court. Had this Court actually promulgated rules establishing a pro bono program and had Gomez challenged the constitutionality of such rules, the district court would have jurisdiction to decide, in the first instance, whether such rules met constitutional standards. *See O'Quinn v. State Bar*, 763 S.W.2d 397 (Tex.1988) (upholding the trial court's decision on a constitutional challenge to the rules of disciplinary conduct promulgated by the Court). In due course, we would review any adverse determination in our adjudicative capacity. *See Cameron v. Greenhill*, 582 S.W.2d 775, 777 & n. 3 (Tex. 1979) (holding that the Court could both promulgate a rule and determine its constitutionality). The important distinction between such a case and the one at hand is that in the former case, the district court would not be cast in the impermissible role of effectively promulgating policies and regulations governing Texas lawyers. Such a case would

be justiciable because the district court would be capable of rendering a judgment that accords the parties complete relief, subject of course to appellate review.

But when, as here, the essence of a complaint is that this Court has failed to establish rules governing some aspect of lawyer conduct, a district court has no authority to assume this Court's authority to regulate the legal profession. This prohibition includes the rendition of orders that would, as a practical matter, preempt this Court's authority. Because the district court cannot effect a remedy that would resolve this dispute, this case does not present a justiciable controversy.[53]

In *Chenault v. Phillips*,[54] on the other hand, we held that a challenge to the attorney occupation tax [55] was a judicial matter, not an administrative matter, and that plaintiffs had a full remedy available in the district court. Distinguishing the case from *Gomez*, we explained:

> Unlike the plaintiffs in *Gomez*, Relators do not seek imposition of new regulations on lawyers in Texas, but rather challenge the constitutionality of a statute that affects lawyers. Yet, as we noted in *Gomez*, constitutional challenges to rules enacted by this Court must be brought in district court and heard by this Court in the exercise of its appellate jurisdiction. . . . Analogously, Relators must follow the same procedure in challenging the constitutionality of the Attorney Occupation Tax. A litigant may not bring such a claim in the first instance in this Court.[56]

The attorney occupation tax, like all taxes, was imposed by the Legislature, not this Court. Although the Legislature has re-

---

51. 891 S.W.2d 243 (Tex.1994).

52. *Cf.* Tex. Gov't Code § 81.024 (recognizing that the Supreme Court may promulgate rules governing the State Bar).

53. *Gomez,* 891 S.W.2d at 246.

54. 914 S.W.2d 140, 142 (Tex.1996) (per curiam).

55. Tex. Tax Code §§ 191.141–.145.

56. *Id.*

quired the Court to administer collection of the tax,[57] the *Chenault* plaintiffs' complaints were directed to the imposition and enforcement of the tax, not merely the manner of its collection. A constitutional challenge to a tax does not fall within this Court's administrative authority merely because the tax is on lawyers or the Court is the collector.

■ *Gomez* and *Chenault* illustrate the analysis we employ in determining whether to treat a petition as an administrative rather than a judicial matter. The matter in *Gomez* was clearly administrative, and plaintiffs could obtain the relief they sought in no forum other than this Court. In *Chenault*, by contrast, the matter was clearly judicial, and plaintiffs could obtain full relief in the district court and on appeal. Applying this same analysis to Nolo Press's request for the UPL Committee's records, we must determine whether Nolo Press's request should be addressed as an administrative matter, and whether Nolo Press has a judicial forum in which to assert its claims.

Whether the UPL Committee's records requested by Nolo Press are confidential is a judicial issue. Nolo Press argues that this Court's 1986 Order contravenes the Public Information Act,[58] various state constitutional provisions, and the common law. Recently in *Commission for Lawyer Discipline v. Benton*,[59] we considered a constitutional challenge to Rule 3.06(d) of the Texas Disciplinary Rules of Professional Conduct, a rule promulgated by this Court. The district court rejected the challenge, but the court of appeals sustained it, holding the rule unconstitutional. Nolo Press's challenge to this Court's 1986 Order is no less justiciable than the challenge in *Benton* to this Court's rule, and the appropri-ate initial forum for this challenge is the district court.

But Nolo Press not only argues that the UPL Committee's records *are not* confidential; it also argues that those records *should not be* confidential. That is, Nolo Press argues that even if our 1986 Order shields the UPL Committee's records from disclosure, the Order should be changed. This is not a justiciable issue for the district court, since that court cannot modify this Court's Order merely because it disagrees with the policies underlying the Order. The policy issue Nolo Press raises is purely an administrative matter which only this Court can address. Indeed, we have already done so in a broader context, while this proceeding has been pending, by promulgating Rule 12 of the Rules of Judicial Administration, governing the confidentiality of all judicial records, including the records of judicial agencies like the UPL Committee.[60] Rule 12 took effect April 1, 1999.[61]

Thus, Nolo Press's petition raises both justiciable and administrative issues. We could defer consideration of the administrative issues while Nolo Press asserted its challenges to our 1986 Order in the district court and under the procedures provided by Rule 12. Even when all those proceedings had run their course, however, the policy issues Nolo Press raises might remain unresolved. Because of our recent promulgation of Rule 12, and its change in the confidentiality of judicial records in general, we believe that the better course is to address those arguments of Nolo Press's that can be treated as an administrative matter concomitantly with this proceeding. Our administrative order issues with this opinion.

---

57. TEX. TAX CODE § 191.1431.

58. TEX. GOV'T CODE §§ 552.001–.353.

59. 980 S.W.2d 425 (Tex.1998).

60. *See* TEX.R. JUD. ADMIN. 12, *published for comment in* 61 TEX. BAR J. 994 (Nov.1998).

61. Order of Final Approval of Rule 12 of the Texas Rules of Judicial Administration and of Canon 3(C)(5) of the Code of Judicial Conduct, Misc. Docket No. 99–9058 (Tex., Mar. 24, 1999), *reprinted in* 62 TEX. BAR J. 450 (May 1999).

* * * * *

Nolo Press's petition for mandamus is dismissed for want of jurisdiction. The Court's Order issued September 16, 1986, concerning the confidentiality of records of the Unauthorized Practice of Law Committee is vacated in Misc. Docket No. 99–9082.

Justice ENOCH filed a concurring opinion.

Justice ABBOTT did not participate in the decision.

## APPENDIX I

### IN THE SUPREME COURT OF THE STATE OF TEXAS

Order of the Court Approving Rules For The Unauthorized Practice of Law Committee

WHEREAS, the Unauthorized Practice of Law Committee is appointed by the Supreme Court of Texas; and,

WHEREAS, the Committee currently has no operating rules; and,

WHEREAS, a motion has been presented by the Chairman of the Unauthorized Practice of Law Committee, proposing alternative sets of rules; and,

WHEREAS, the Supreme Court of Texas has considered and approved the rules presented in alternative one,

IT IS, THEREFORE, ORDERED that the rules identified as "Exhibit A" and attached hereto and incorporated by reference be adopted.

By the court, en banc, in chambers, this 17 [th] day of November, 1980.

s/ Joe R. Greenhill, Chief Justice
   Zollie Steakley, Justice
   Jack Pope, Justice
   Sears McGee, Justice
   James G. Denton, Justice
   Charles W. Barrow, Justice
   Robert M. Campbell, Justice
   Franklin S. Spears, Justice

Will Garwood, Justice

## [EXHIBIT A]

### ARTICLE ____ —UNAUTHORIZED PRACTICE OF LAW COMMITTEE

### RULE NO. ____

The Supreme Court of Texas, pursuant to Tex.Rev.Civ.Stat. Ann. art. 320a–1, § 8 (1979) and pursuant to this Court's own inherent power to regulate and control the practice of law, promulgates the following Rules governing the activities of the Unauthorized Practice of Law Committee for the State Bar of Texas:

SECTION 1. Appointment of Committee

The Unauthorized Practice of Law Committee for the State Bar of Texas (hereinafter the "Committee") shall consist of nine (9) members appointed by the Supreme Court, three (3) of which members shall be nonlawyers. Members of the Committee shall serve for a term of three (3) years, except that the Supreme Court in making the first appointments to the Committee shall appoint three (3) members to serve an initial term of one (1) year, three (3) members to serve an initial term of two (2) years, and three (3) members to serve an initial term of three (3) years. All members of the Committee shall be eligible for reappointment. A chairperson of the Committee shall be designated each year by the Supreme Court.

SECTION 2. Duties of Committee

The Committee shall keep the Court and the State Bar informed with respect to the unauthorized practice of law by laypersons and lay agencies and the participation of attorneys therein, and concerning methods for the prevention thereof. The Committee shall seek the elimination of the unauthorized practice by action and methods as may be appropriate for that purpose, including the filing of suits in the name of the Committee.

## SECTION 3.   Rules and Procedures

The Committee, in carrying out its duties, shall establish from time to time rules and procedures governing the activities of the Committee, which rules and procedures shall be approved by vote of two-thirds of the members of the Committee. Such rules and procedures shall include provision for the following:

a.   investigation as deemed appropriate by the Committee or its delegees of complaints involving the possible unauthorized practice of law;

b.   at a reasonable time prior to a decision by the Committee to commence litigation and/or other enforcement activity, notice to the subject of the complaint of the nature of the complaint and an opportunity for the subject of the complaint to respond to the complaint, unless providing such notice and/or such opportunity to respond in a particular case is determined by a majority of the Committee's quorum to prejudice unduly the Committee's enforcement activity and the public's interests;

c.   determination by the Committee of the advisability of litigation and/or other enforcement activity in the name of the Committee necessary or appropriate for the elimination or prevention of the unauthorized practice of law;

d.   recusal of individual Committee members and delegees in circumstances in which it would be improper or appear to be improper for the individual(s) to participate in a case before the Committee;

e.   convening of regular meetings of the Committee, and the calling of special meetings and/or special mail ballotings;

f.   establishment of a quorum as being a majority of the Committee, or in the case of a special mail balloting as being the casting of voted ballots by a majority of the Committee.

## SECTION 4.   Delegation of Powers

The Committee, acting through its Chairperson, may appoint subcommittees of one or more members of the State Bar of Texas and/or of other persons to carry out the Committee's duties of investigation. The Committee may also appoint counsel to act on its behalf in litigation and/or other enforcement activity. The Committee may not delegate its duty of making the final decision concerning against whom litigation and/or other enforcement activity shall be brought.

## SECTION 5.   Subpoena Power

The Committee or any member of the Committee authorized to act on behalf of the Committee shall have the power to subpoena witnesses and tangible evidence before the Committee or its subcommittees or delegees. If any witness, after such subpoena has been served, fails or refuses to appear before the Committee or its delegees, or to produce tangible evidence described in the subpoena, or refuses to be sworn or to testify, such witness may be compelled by a judge of any district court to appear, to testify and to produce such evidence.

## SECTION 6.   Bonds

The Committee shall not be required to post any bond upon the granting of a temporary restraining order, temporary injunction, or permanent injunction pursuant to any litigation filed by the Committee.

## SECTION 7.   Advisory Opinions

The Committee shall not issue advisory opinions concerning the unauthorized practice of law.

## SECTION 8.   Oath of Office

Each member of the Committee and each person acting as a delegee of the Committee shall take the following oath before the present chairperson of the Committee or the chairperson of the Committee for the immediately prior year, or any other person authorized by law to administer oaths:

I, _____, do solemnly swear (or affirm) that I will faithfully execute the duties of the office of a member (or delegee) of the Unauthorized Practice of

Law Committee for the Bar of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State; and I furthermore solemnly swear (or affirm), that I have not directly nor indirectly paid, offered, or promised to pay, contributed, nor promised to contribute any money, or valuable thing, or promised any public office or employment, as a reward to secure my appointment or the confirmation thereof. So help me God.

SECTION 9. Replacement of Members

In the event of death, disability, resignation or misconduct (including failure to participate in the Committee's activities) of a member of the Committee, the Supreme Court of Texas shall have the power to replace such member and to appoint a new member of the Committee to fulfill the term of office of the member so replaced.

SECTION 10. Immunity

The Committee, any member thereof, and any delegee thereof shall be immune from any suit for any conduct in the course of their official duties. Complainants and witnesses shall enjoy the same immunity in proceedings before the Committee as is accorded to complainants and witnesses in judicial proceedings.

SECTION 11. Expenses

The necessary and actual expenses of the Committee and its subcommittees or delegees shall be provided for and paid out of the budget of the State Bar of Texas.

## APPENDIX II

### IN THE SUPREME COURT OF THE STATE OF TEXAS

Supplemental Order to the November 17, 1980 Order
Adopting Rules for the Unauthorized Practice of Law Committee

WHEREAS, the Unauthorized Practice of Law Committee is appointed by the Supreme Court of Texas; and,

WHEREAS, the Committee currently operates pursuant to rules considered and approved and ordered adopted by the Supreme Court, in banc, in chambers of November 17, 1980; and

WHEREAS, The Committee in its work discharges its obligations on behalf of the Supreme Court;

IT IS, THEREFORE, ORDERED that the rule adopted as "Exhibit A" and attached hereto and incorporated by reference be adopted by the Court, in banc, in chambers, this 16th day of September, 1986.

John L. Hill, Chief Justice

Sears McGee, Justice

Robert M. Campbell, Justice

Franklin S. Spears, Justice

C.L. Ray, Justice

James P. Wallace, Justice

Ted Z. Robertson, Justice

William W. Kilgarlin, Justice

### EXHIBIT "A"

### UNAUTHORIZED PRACTICE OF LAW COMMITTEE

Rule No._____

Section 12.

Said Committee shall keep all records, documents and other information of the Unauthorized Practice of Law Committee and its subcommittees (hereinafter referred to collectively as the "Committee") that are in its possession for the purposes of discharging its obligations in behalf of the Supreme Court confidential and shall release same only:

(1) For the Committee's use in enforcement proceedings to eliminate the unauthorized practice of law;

(2) To satisfy all other requirements of the Committee pursuant to Tex.Rev. Civ. Stat. Ann. art. 320a–1, § 19;

(3) In response to proper requests of or to assist law enforcement agencies and prosecutors in the detection, investigation and prosecution of crimes; and

(4) In furtherance of any other orders from the Texas Supreme Court.

Justice ENOCH, concurring.

I only take issue with the Court's approach to this matter. The phrase "making a mountain out of a mole hill" comes to mind.

This Court is empowered to determine the qualifications of persons authorized to practice law in this state's courts.[1] With that power comes the necessary ancillary power to stop the unauthorized practice of law. The Unauthorized Practice of Law Committee is simply an entity that has the standing necessary to litigate whether one is practicing law without authority.[2] The UPL Committee has no independent regulatory power. Its power is that of any other plaintiff—it can investigate whether to sue, and can bring a lawsuit. As well, Nolo Press, if sued, would have the power of any other defendant—it could choose to defend and have discovery. If the UPL Committee decides to sue and if Nolo Press decides to defend, a court will decide the case. This is the entire matter. Yet the Court jumps the gun by entertaining Nolo Press's request for a writ of mandamus and elevating this case with the mantra of open records.

Why the Court jumps the gun troubles me. I cannot imagine under any similar circumstance that the Court would enable a potential defendant to pretermit a plaintiff's suit and the orderly application of the discovery rules through a mandamus action. This is particularly so because the legislature has empowered potential defendants to invoke the jurisdiction of the courts and the power of discovery through the device of declaratory judgment[3]—a device, by the way, that Nolo Press evidently knows how to use.[4]

It also troubles me that we use this one case to alter an administrative rule that has been in effect for thirteen years. And we do so without any comment on the proposed changes from the UPL Committee members or any other interested persons. Nolo Press certainly is not the only one with an interest in the operation of the UPL Committee. Furthermore, I do not think it's fair to say that our comment period for Administrative Rule 12, which generally deals with judicial records, was fair notice that our previous specific order concerning the Unauthorized Practice of Law Committee was to be changed.[5] In fact, I'm confident the Court didn't even know that that order was under consideration. So how could our committee know at the time that this order was being reconsidered?

I agree that the request for mandamus should be dismissed because this Court doesn't have jurisdiction. While I also agree with much of what the Court says, the opinion serves only to build a mole hill into a mountain. The writ should be dismissed without further comment.

1. *See* TEX. GOV'T CODE § 81.061; *see also State Bar of Texas v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994).

2. *See* TEX. GOV'T CODE §§ 81.103–.104; Order Approving Rules For The Unauthorized Practice of Law Committee § 2 (Tex. Nov. 17, 1980) (*supra,* Appendix I).

3. *See* TEX. CIV. PRAC. & REM.CODE §§ 37.002–.004.

4. *See Nolo Press/Folk Law, Inc. v. The Unauthorized Practice of Law Committee,* No. 99–03252 (201 st Dist. Ct., Travis County, Tex., Mar. 17, 1999).

5. *See* In re Petition of Nolo Press, Inc. to Amend Rules Governing the Unauthorized Practice of Law Committee, Misc. Docket No. 99–9082 (Tex. Apr. 15, 1999) (per curiam).

APPENDIX

## IN THE SUPREME COURT OF TEXAS

Misc. Docket No. 99–9082

IN RE PETITION OF NOLO PRESS, INC.

TO AMEND RULES GOVERNING THE UNAUTHORIZED PRACTICE OF LAW COMMITTEE

### PER CURIAM

In Cause No. 98–0724, styled *In re Nolo Press/Folk Law, Inc.*, relator Nolo Press, Inc., a publisher of self-help legal books and computer software, has petitioned for a writ of mandamus compelling the Unauthorized Practice of Law Committee of the State Bar of Texas to produce certain documents and information, and alternatively, for clarification or modification of this Court's September 16, 1986 Order[1] that limits disclosure of Committee records. In today's opinion in that case we deny mandamus relief and, for reasons there explained, conclude that Nolo Press's alternative request for clarification or modification of the 1986 Order should be treated as an administrative matter.[2] We here address that matter.

The 1986 Order makes all the UPL Committee's records confidential. Before considering modifications to this Order our usual procedure would be to call for comments from the Committee and all interested persons. That procedure has already been served last year, however, by the Judicial Council's lengthy study and several public hearings regarding disclosure of certain records and information possessed by courts and agencies in the Judicial Department. Although the study did not focus on the UPL Committee, all persons interested in the confidentiality and disclosure of records of all judicial agencies were invited to comment. The Court received no comments specifically related to the UPL Committee. Based on the Council's recommendations and public comments, the Court promulgated proposed Rule 12 of the Rules of Judicial Administration, subject to comments received prior to its effective date of April 1, 1999.[3] After receiving additional comments and making other changes, the Court has promulgated Rule 12.[4]

The UPL Committee is a "judicial agency" as defined by Rule 12.2(b), but because this Court's 1986 Order makes all the Committee's records confidential, Rule 12 does not apply to the Committee.[5] Rule 12 is designed to protect a judicial agency's records from public disclosure when its function would be compromised, and otherwise to make records available to the public on request. We see no reason why this rule should not apply to the UPL Committee as it would to any other judicial agency; indeed, one goal of Rule 12 is a uniform treatment for judicial records throughout the judicial department. Since the UPL Committee has no adjudicative power, all its records would be judicial records as defined by Rule 12.2(d).

Nolo Press has requested four categories of information and records: (1) the names of the UPL Committee's subcommittee members; (2) the dates, times, locations, agendas, and minutes of past and future meetings; (3) copies of the Commit-

---

1. Supplemental Order to the November 17, 1980 Order Adopting Rules for the Unauthorized Practice of Law Committee (Tex. Sept. 16, 1986) (hereinafter "1986 Order") (*infra*, Appendix I).

2. *In re Nolo Press/Folk Law, Inc.*, 991 S.W.2d 768 (Tex.1999).

3. Order Approving Revisions to the Texas Rules of Judicial Administration, Misc. Dock-

et No. 98–9170 (Tex., Oct. 8, 1998), *reprinted in* 61 TEX BAR J. 994 (Nov.1998).

4. Order of Final Approval of Rule 12 of the Texas Rules of Judicial Administration and of Canon 3(C)(5) of the Code of Judicial Conduct, Misc. Docket No. 99–9058 (Tex., Mar. 24, 1999), *reprinted in* 62 TEX. BAR J. ___ (May 1999).

5. TEX.R. JUD. ADMIN. 12.3(a).

tee's internal rules and procedures; and (4) all internal documents related to the Subcommittee's investigation of Nolo Press. We cannot, of course, decide how Rule 12 would apply to specific records of the UPL Committee. We have not reviewed the Committee's records, nor is it for this Court to make such determinations in the first instance. Rule 12 provides a procedure for applying and enforcing its provisions. Rather, our concern is whether there is something about the UPL Committee's operations or records in general that should require treatment different from that afforded other judicial agencies whose functions must also be conducted with a degree of confidentiality. Neither Nolo Press's request, nor any factor considered by the Judicial Council of which we are aware, suggests that the UPL Committee must be treated uniquely.

Accordingly, we conclude that our 1986 Order should not insulate the UPL Committee's records from disclosure under Rule 12. Vacating that Order will place the UPL Committee under Rule 12.

IT IS THEREFORE ORDERED that the Court's September 16, 1986 Order relating to the Unauthorized Practice of Law Committee is vacated.

SIGNED AND ENTERED this 15th day of April, 1999.

/s/ Thomas R. Phillips
Thomas R. Phillips, Chief Justice

/s/ Nathan L. Hecht
Nathan L. Hecht, Justice

/s/ Craig T. Enoch
Craig T. Enoch, Justice

/s/ Priscilla R. Owen
Priscilla R. Owen, Justice

/s/ James A. Baker
James A. Baker, Justice

/s/ Greg Abbott
Greg Abbott, Justice

/s/ Deborah G. Hankinson

Deborah G. Hankinson, Justice

/s/ Harriet O'Neill
Harriet O'Neill, Justice

/s/ Alberto R. Gonzales
Alberto R. Gonzales, Justice

## APPENDIX I

### IN THE SUPREME COURT OF THE STATE OF TEXAS

Supplemental Order to the November 17, 1980 Order
Adopting Rules for he Unauthorized Practice of Law Committee

WHEREAS, the Unauthorized Practice of Law Committee is appointed by the Supreme Court of Texas; and,

WHEREAS, the Committee currently operates pursuant to rules considered and approved and ordered adopted by the Supreme Court, in banc, in chambers of November 17, 1980; and

WHEREAS, The Committee in its work discharges its obligations on behalf of the Supreme Court;

IT IS, THEREFORE, ORDERED that the rule adopted as "Exhibit A" and attached hereto and incorporated by reference by adopted by the Court, in banc, in chambers, this 16th day of September, 1986.

s/ John L. Hill, Chief Justice
Sears McGee, Justice
Robert M. Campbell, Justice
Franklin S. Spears, Justice
C.L. Ray, Justice
James P. Wallace, Justice
Ted Z. Robertson, Justice
William W. Kilgarlin, Justice

### EXHIBIT "A"UNAUTHORIZED PRACTICE OF LAW COMMITTEE

Rules No. _____

Section 12.

Said Committee shall keep all records, documents and other information of the Unauthorized Practice of Law Committee and its subcommittees (hereinafter referred to collectively as the "Committee") that are in its possession for the purposes of discharging its obligations in behalf of the Supreme Court confidential and shall release same only:

(1) For the Committee's use in enforcement proceedings to eliminate the unauthorized practice of law;

(2) To satisfy all other requirements of the Committee pursuant to Tex.Rev. Civ. Stat. Ann. Art. 320a–1, § 19;

(3) In response to proper requests of or to assist law enforcement agencies and prosecutors in the detection, investigation and prosecution of crimes; and

(4) In furtherance of any other orders from the Texas Supreme Court.